Argued July 21, decided July 29, 1913.

## FREDERICK & NELSON *v.* BARD.

### (134 Pac. 318.)

**Trial—Findings of Court—Necessity.**

1. A judgment rendered without findings of fact or conclusions of law by the court has no foundation and is void.

**Judgment—Amendment—Nunc Pro Tunc.**

2. When in fact no findings of fact or conclusions of law were made by the court at the time of or previous to the rendition of a judgment, this omission could not afterward be supplied by a *nunc pro tunc* order, the function of such proceeding being to put on record a true memorial of what did occur, not something that did not occur.

[As to entry of judgment *nunc pro tunc*, see note in 4 Am. St. Rep. 828.]

**Appeal and Error—Cases Triable in Appellate Court.**

3. Article VII, Section 3, of the Constitution, as amended November 8, 1910 (see Laws 1911, p. 7), providing that either party on appeal may attach to the bill of exceptions the whole testimony, and if in any respect the judgment appealed from should be changed, and the Supreme Court is of the opinion that it can determine what judgment should have been rendered by the lower court, it shall render judgment itself, as decrees are now entered in equity cases on appeal to the Supreme Court, is not mandatory but permissive only; hence, when a judgment is void because rendered by the lower court without making findings of fact or conclusions of law, the court on appeal is not bound to render judgment.

From Multnomah : HENRY E. MCGINN, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

The plaintiff, Frederick & Nelson, a corporation, declares in the usual form upon two promissory notes

executed and delivered to it by W. H. Bard, amounting together to $750 of principal, besides interest as stated in the complaint.

The answer admits the actual execution of the notes but makes two affirmative defenses. The first is, in substance, that the notes were executed without consideration, specifying under this head that the plaintiff had agreed to give him 10 per cent commission on the sale of all goods by it, either to himself or brought about by his procurement; that by virtue of that contract he had earned commissions largely in excess of the notes in question; and that when they were executed the plaintiff falsely represented to him that he had already been credited and paid those commissions in the settlement of an account which the defendant's former wife had contracted with the plaintiff, and which the defendant had assumed and agreed to pay, and that the amount represented by the notes was due from the defendant to the plaintiff over and above the commissions. The second affirmative defense is also based on the alleged contract for commissions and is interposed as a counterclaim.

The reply traverses the new matter of the answer. The case was heard before the Circuit Court without a jury, and judgment was rendered January 30, 1912, in favor of plaintiff against the defendant for the full amount claimed. The defendant has appealed.

                                       REVERSED.

For appellant there was a brief over the names of *Mr. James E. Fenton* and *Mr. Robert E. Hitch,* with an oral argument by *Mr. Fenton.*

For respondent there was a brief over the names of *Mr. Kingman Brewster* and *Mr. William L. Brewster,* with an oral argument by *Mr. Kingman Brewster.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1, 2. The principal question urged for our consideration at the hearing was that the Circuit Court rendered a judgment on the day of hearing without making any findings of fact or conclusions of law, and that under the authority of *Moody* v. *Richards,* 29 Or. 262 (45 Pac. 777), and other like cases, the judgment had no foundation and was consequently void. The bill of exceptions sets out the judgment rendered on January 30, 1912, and recites that ''the defendant then and there excepted to the rendering and entering of said judgment, and his exception was then and there allowed.'' In the typewritten bill of exceptions it is twice stated in different paragraphs that no findings of fact or conclusions of law were made or filed in the above-entitled case. There is, however, interlined in that document with pen and ink these words: ''On April 23, 1912, on application of plaintiff, the court made findings of fact and conclusions of law herein and ordered that the same be entered as of date January 30, 1912, to all of which defendant then and there excepted, and an exception was then and there allowed.'' The bill of exceptions was settled April 24, 1912. In this contradictory state of the record, were it not for the admission of counsel, it would be difficult for the court to determine what was really done in the proceedings connected with this case.

The defendant also appealed from the order of the court of April 23, 1912, directing findings of fact and conclusions of law to be made and filed as of the previous date, January 30, 1912. It was admitted at the argument that no findings of fact or conclusions of law were filed previous to the rendition of the judgment. Plaintiff, however, relies upon the order of April 23, 1912, as a *nunc pro tunc* order curing the

omission of the court to file findings of fact and con-
clusions of law prior to the rendition of the judgment.
The rule relating to such orders is thus tersely stated
by Mr. Justice BEAN in *Grover* v. *Hawthorne,* 62 Or.
69, 75 (121 Pac. 804, 807) : "When a judgment has
been actually rendered or an order made by the court
which is entitled to be entered of record but, owing·
to the misprision of the clerk, has not been so entered,
the court may order the entry to be made *nunc pro
tunc.* But it is not the function of the court to create
an order now, which ought to have been passed at a
former time. In ordering an entry made *nunc pro
tunc,* not one jot or tittle should be added to or taken
from the original judgment."

In the case at bar, no findings of fact or conclusions
of law having been made by the court, it was not com-
petent to afterward declare, in substance, that they
had been made and to supply them by a so-called *nunc
pro tunc* order. The function of such a proceeding is·
to put upon the record a true memorial of what did
indeed occur in the litigation of the case, but about
which the journal of the court speaks either imper-
fectly or incorrectly or else is silent. It cannot prop-
erly be made the means of patching up a defective
record by injecting therein something that did not
occur. It may speak of that which was, but it cannot
invent that which was not. It necessarily follows that
the plaintiff can take nothing here by virtue of the
*nunc pro tunc* order mentioned, and in that respect
the judgment of the Circuit Court should be reversed.

3. It is contended, however, by the plaintiff that,
inasmuch as the report of the testimony taken in the
trial of the case below is all before us, we must neces-
sarily take up the matter, consider all the evidence,
try the case *de novo* on the facts, and render a judg-

ment here notwithstanding the Circuit Court did not in the first place perform that duty incumbent upon it.

In *Taffe* v. *Smyth,* 62 Or. 227 (125 Pac. 308), the complaint contained seven separate causes of action, all contested by the defendant. The issues were heard before the court without a jury, and by some inadvertence the judge neglected to make findings on the fifth cause of action. The question was not complicated, the testimony was plain, and in an opinion by Mr. Justice MOORE this court held that it had the power and exercised it under Article VII, Section 3, of our Constitution, to make a finding upon the omitted count.

In *State* v. *Rader,* 62 Or. 37 (124 Pac. 195), the court had before it all the testimony reported in the case, and, construing the same section, it was said by Mr. Justice McBRIDE that: "If the evidence were clear and without contradiction, we would ourselves try out the case here as we have a right to do under our amended Constitution, but it is wholly circumstantial, and the facts can be much better determined by a jury of the vicinage than by us." The judgment was reversed and the cause remanded to the court below for a new trial there.

In the case of *Witt* v. *Campbell-Lakin Segar Co.,* *ante,* p. 144 (134 Pac. 316), decided by this court July 22, 1913, the action was upon a promissory note, the execution of which was admitted by the defendant. A counterclaim was interposed to the effect that the note was given in payment for some cigars to a company of which the plaintiff was president; that the goods proved to be defective, to the damage of the defendant more than the amount of the note; and that the plaintiff took the note with knowledge of the transaction out of which it arose. The case was heard before the Circuit Court and decided there in favor of

the plaintiff. All the testimony was annexed to the bill of exceptions and forwarded to this court. In an opinion by Mr. Chief Justice McBRIDE the case was reversed and returned to the Circuit Court for a new trial, this court declining to undertake the task of deciding the questions of fact involved.

The constitutional provision involved reads thus in part: "Until otherwise provided by law, upon appeal of any case to the Supreme Court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the Supreme Court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court * * ": Article VII, Section 3, of the Constitution, as amended November 8, 1910 (see Laws 1911, p. 7).

The language of the amended organic act is not mandatory on this point but permissive only. The rendition of a final judgment upon the facts in this court depends upon whether we shall be of the opinion that we can determine what judgment should have been entered in the court below, plainly leaving it to the discretion of the court in such cases. Hence no one can insist, as a matter of right, that we shall in all cases in actions at law render a final decision upon

the facts involved after a consideration of the testimony reported here. That this power is discretionary is a necessary result of the different conclusions reached in the cases above cited on this point. The people and litigants are entitled to full performance of its duty by the trial court. It is not good policy to encourage disregard of statutory rules in the trial of causes. It would soon lead to decisions *pro forma* or by mere arbitrary impulse in the Circuit Court, thus imposing on the appellate court the task of deciding questions of fact on mere paper recitals of testimony reported in the record. The spirit of the law and the rights of litigants are not duly subserved by such procedure. It would soon make appeals necessary in every case and thus defeat one of the objects of the change in the organic law, viz., diminishing the number of appeals. While the evidence does not sustain the charge of fraud, however stated, yet on the other questions of fact involved concerning the counterclaim so much depends upon seeing and hearing the witnesses and observing their manner of testifying, and the dispute is so marked, that we are not inclined to decide the facts on the record before us.

The judgment is reversed and the cause remanded for a new trial.                              REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.