Note.—See "Appeal and Error," 4 C. J. §1786, p. 177. n 22. "Contracts." 13 C. J. §489, p. 531, n. 70. "Constitutional Law," 12 C. J. §41, p. 699, n. 68; §43, p. 700. n. 74; §47, p. 703, n. 97; p. 704, n. 98. 1; §152, p. 741, n. 58; §390, p. 887, n. 38. "Judgments," 34 C. J. §226, p. 84, n. 57. "Officers," 46 C. J. §287, p. 1031, n. 71; §290, p. 1033, n. 94. "States," 36 Cyc. p. 852, n. 32; p. 892, n. 15. 16. "Statutes," 36 Cyc. p. 1017, n. 77; p. 1020, n. 87; p. 1114, n. 96.

## WOODMANSEE v. WOODMANSEE et al.

No. 18404. Opinion Filed March 19, 1929.

Rehearing Denied June 11, 1929.

resented her age at the time he procured the marriage license, and that defendant had falsely and fraudulently represented to plaintiff that she was of the age that she could legally enter into the marriage relation with him. The prayer was:

"That she may be divorced from her said husband by reason of the fault of said defendant, and for such other and further belief as may be just and equitable."

Summons was issued, and the return of the sheriff shows personal service on defendant.

Defendant failed to appear, and filed no plea to the petition. On January 6, 1917, defendant being in default, the cause was tried, and at the close of the evidence the following entry was made by the clerk in a book referred to by him as a clerk's minutes of court's proceedings:

"3489. Mary Buffalo Woodmansee v. Manderville Woodmansee. Divorce. A. W. Comstock.

"Now on this 6th day of Jan., 1917, the same being one of the regular judicial days of the 1916 November term of court, Osage county, Oklahoma, this case was called on the regular call of the docket for trial. The plaintiff being present in person and by her counsel, the defendant defaults, although being duly and regularly served with summons, the court after hearing the testimony and being fully advised in the matter, grants the plaintiff a decree of divorce as per journal entry."

Thereafter on January 20, 1917, a formal journal entry of decree was filed in which are the findings of the court to the effect that all the allegations of the petition were true, and specific findings, as follows:

"The court further finds that said defendant had abandoned plaintiff more than one year next preceding the filing of said petition, and that said abandonment was continuous and without fault of plaintiff.

"That at the time of the marriage, between plaintiff and defendant, said plaintiff was under the age of 16 years and did not have the consent of her parents or guardian to enter into said marriage contract and that the defendant made an affidavit, which he knew to be false, stating that she was over the age of 18 years in order to secure said marriage license

"That plaintiff has always conducted herself properly."

Instead of the decree granting a divorce as prayed for and as indicated in the minutes of the clerk, the decree was:

"It is, therefore, ordered, adjudged and decreed by this court that the parties hereto

D. B. Horsley, for plaintiff in error.

Wilson & Duncan, Leahy, MacDonald & Files, and J. M. Humphreys, for defendants in error.

DIFFENDAFFER, C. On June 29, 1914, Tsa-Me-Tsa (Mary Buffalo), an Osage Indian, then a little past 15 years of age, and Manderville Woodmansee, were married at Independence, Kan. On November 21, 1916, she filed in the district court of Osage county a verified petition for divorce. As grounds therefor, she alleged abandonment for more than one year and extreme cruelty. She also made certain allegations to the effect that defendant had willfully misrep-

were never legally married and that said pretended marriage is annulled and is null and void and both parties are released from the same."

The plaintiff shortly thereafter was married to another party, and divorced from him in November, 1917. On June 29, 1920, she died without having been remarried, and without issue, father or mother, leaving surviving her, Eliza Bigheart, a sister, one of the defendants in error.

Proceedings were had in the county court in settlement of her estate, and on October 18, 1924, it appearing that deceased had left a will, a decree of final settlement of the estate was entered by stipulation between the parties claiming under the will and Mary Bigheart, her sister.

Manderville Woodmansee does not appear to have been claiming any part of the estate at that time.

October 16. 1926. Woodmansee filed a motion in the original action in the district court to vacate, set aside, and hold for naught the decree entered on the 6th day of January, 1917, setting out as grounds therefor that the court had no jurisdiction of the subject-matter of the action nor of the person of defendant; that the decree was outside, not responsive to, and beyond the issue alleged and relied upon by the plaintiff as grounds for a divorce.

An original action was also filed seeking the same relief, and some proceedings were commenced in the county court to set aside the decree of final settlement. While the motion of Woodmansee was pending, the administrator. Eliza Bigheart, by her guardian, and the other defendants in error filed a motion in the original action for an order. "nunc pro tunc." amending and correcting the decree by striking out that part thereof which reads:

"It is therefore considered, adjudged and decreed by this court, that the parties hereto were never legally married and that said pretended marriage is annulled and is null and void and both parties are released from the same"

—and inserting in lieu thereof the following:

"It is, therefore, considered, ordered and decreed by the court that the marriage relation heretofore existing between the plaintiff, Tsa-Me-Tsa, whose English name is Mary Woodmansee, and the defendant Manderville Woodmansee, be and the same is hereby dissolved and set aside and the said parties are hereby released from the same. It is further ordered that this decree do not become absolute and take effect until six months from the date hereof."

A hearing was had upon this motion at which evidence was taken, resulting in an order granting the motion and amending and correcting the original decree, nunc pro tunc, as prayed for by movants. From this order, defendant below prosecutes this appeal.

There are seven assignments of error. The first is: That the court erred in sustaining the motion of defendants in error for an order nunc pro tunc.

In Courtney v. Barnett, 65 Okla. 189, 166 Pac. 207, it was held:

"Jurisdiction is inherent in every court of record to cause its records to speak the truth and by nunc pro tunc order, on proper application and notice, to cause to be entered orders and judgments made by the court which by inadvertence or mistake the clerk or the court has omitted to record."

"Jurisdiction to order entered, nunc pro tunc, orders and judgments made by the court, but omitted from the record by the clerk or the court, is not lost by lapse of time, where no intervening rights are affected."

The only question in this case is: What is the truth as to the judgment or decree ordered to be entered by the court on January 6, 1917? That is, Was it the order of the court that the plaintiff in the action be granted a divorce, or was it the order of the court that there had never been a valid marriage?

If the former, then we think, under the record here, that there was no error in the order of the court complained of. If the latter, then it would appear that the court entered an order for a judgment or decree which was entirely outside the issues submitted to the court, and to that extent a nullity.

It appears from the record that the attorney for plaintiff in the original action did not prepare the journal entry or decree which was signed by the judge, but that same was prepared by some one in his office, and submitted to the trial judge for his signature.

The petition of plaintiff contained every allegation essential for a divorce. There was no sufficient allegation upon which a decree of annulment of the marriage could be based. It is well settled, and conceded by both parties, that the court is without power by nunc pro tunc to bring into being a judgment or decree that was not in fact ordered. The office, and the only office, of an order nunc pro tunc is to make the record, when corrected, speak the truth.

That is, as was said in Frederick & Nelson v. Board, 66 Ore. 259, 134 Pac. 318:

"The function of such a proceeding is to put upon the record a true memorial of what did indeed occur in the litigation of the case, but about which the journal of the court speaks either imperfectly or incorrectly or else is silent. It cannot properly be made the means of patching up a defective record by injecting therein something that did not occur. It may speak of that which was, but it cannot invent that which was not."

Plaintiff in error in his brief says:

"A nunc pro tunc order entered upon parol evidence by the great weight of authority is void."

Some authority from other jurisdictions is cited, but we think the rule in this state is otherwise.

In Courtney v. Barnett, supra, it was said:

"It must be borne in mind also, in consideration of this case, that the rule in Oklahoma as to the evidence necessary to justify the making of a nunc pro tunc order is more liberal than the rule adopted in many of the states. Here an order for the entry of a nunc pro tunc judgment may be made upon parol evidence."

However, the evidence in the instant case is not entirely parol. It is not a case where the record is entirely silent. We are not entirely without a record to show what the actual judgment of the court was. By section 865, C. O. S. 1921, the court clerk is required to keep, among other records, a "journal."

Section 867 provides:

"On the journal shall be entered the proceedings of the court of each day, and all orders of the judge in vacation or at chambers, and also all judgments entered on confession or default."

The entry in the minutes, a record kept by the court clerk, shows the default of defendant, and then recites that:

"The court, after hearing the testimony and being fully advised in the matter, grants plaintiff a decree of divorce, as per journal entry."

Much stress is laid upon the fact that some two weeks after the trial the judge signed a journal entry, presented to him for his signature, which did not grant the plaintiff a divorce at all, but merely adjudged that plaintiff and defendant were never legally married. Plaintiff in error insists that this journal entry is absolutely void as

being entirely without the issues, and at the same time insists that it should stand in its entirety as the judgment and decree of the court actually rendered. In other words, he insists that it was the deliberate intention of the judge to render and enter a decree void on its face. The mere fact that the trial judge signed the journal entry, adjudging that the parties were never legally married is not conclusive that such was the judgment or decree actually intended to be rendered.

In Standard Savings & Loan Ass'n v. Anthony Wholesale Gro. Co., 62 Okla. 242, 162 Pac. 451, this court said:

"A trial court cannot be expected to read and scrutinize journal entries of judgment presented to it, but must rely upon counsel submitting correct judgments within and in conformity to the issues. Where this is not done and the journal entry of judgment signed by the court recites a judgment entirely without the issues, and without any allegation whatever to sustain, it is, and should be held, to that extent absolutely void and of no effect whatever."

The trial judge had the right to assume that the journal entry presented to him correctly reflected the order he had made at the close of the evidence that plaintiff be granted a divorce.

There is abundant evidence in the record to show that the journal entry, as presented to the trial judge, did not contain a true memorial of what did, in fact, occur in the litigation of the case at the trial, but, on the contrary, it speaks imperfectly and incorrectly. The journal entry as signed was therefore subject to correction by an order nunc pro tunc in order that it may be made to speak the truth.

Plaintiff in error complains of the trial court in admitting certain evidence offered by defendants in error and rejecting certain evidence offered by him. We have carefully examined the record, and are convinced that there was no reversible error committed.

The judgment should be affirmed.

BENNETT, HERR, HALL, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 15 R. C. L. p. 627; 3 R. C. L. Supp. p. 480; 5 R. C. L. Supp. 844; 6 R. C. L. Supp. p. 925. See "Courts," 15 C. J. §395, p. 975, n. 10. "Judgments." 34 C. J. §205, p. 71, n 39; §218, p. 77, n. 78; §221, p. 79, n. 1 "Motions and Orders." 42 C. J. §221, p. 534, n. 22; §224, p. 537, n. 41.