## OKLAHOMA-ARKANSAS TELEPHONE CO. et al. v. SOUTHWESTERN BELL TELEPHONE CO. et al.

No. 19907. Opinion Filed April 29, 1930.

Rehearing Denied Sept. 16, 1930.

Ames, Cochran, Ames & Monnet and James B. McDonough, for plaintiff in error.

Claude Nowlin, J. R. Speilman, and Joseph W. Jamison, for defendants in error.

ANDREWS, J. The plaintiff in error will be hereinafter referred to as plaintiff, or the Poteau Company, and the defendant in error as defendant, or the Bell Company, as the context will require.

The Poteau Company owns and operates telephone properties consisting of exchanges at Poteau, Heavener, Howe, and Wister, in Oklahoma, with toll lines connecting those exchanges with each other and with the exchange of the Bell Company at Forth Smith, Ark. The Bell Company has toll lines connecting its stations throughout the United States. One of those lines extends from Fort Smith, Ark., to Poteau, Okla., where a connection is maintained with the exchange of the Poteau Company.

This record shows that in 1913 the predecessor of the Bell Company and the predecessor of the Poteau Company entered into a contract for the division of tolls and compensation for terminating and originating toll messages. Settlements were made between the companies under that contract until 1923, when a new contract was entered into under which the compensation was fixed on the basis of 3c plus 15 per cent. of the toll charge for services performed in originating calls, and 4c for terminating calls, the balance of toll revenue to be prorated according to the line haul. That contract provided that it should remain in force for a term of one year and thereafter until the expiration of 30 days after written notice of intention to terminate the same was

given by either party to the other. Settlements were made thereunder until 1926, when the Bell Company discontinued settling under the contract and worked out a composite percentage upon which it required settlements to be made. Settlements were thereafter made on that basis until October, 1926, at which time the Bell Company gave notice that settlements would no longer be made under that composite; that a study would be made for the purpose of preparing a new composite, and that during the period of the study settlements would be made according to the 1923 contract. Settlements were made under the 1923 contract for about three months, at the expiration of which time the Bell Company produced a new composite and insisted that future settlements should be made on the basis of that composite. The Poteau Company refused to accept the latter composite, insisted that compensation should be made on a basis of 25 per cent. of the revenue, and retained that amount from the toll revenue collected by it. The Bell Company continued to bill the Poteau Company on the basis of the latter composite, and now contends that the Poteau Company is indebted to it for the difference between the amount claimed by it and the amount paid by the Poteau Company. The controversy continued, and in July, 1927, the Bell Company brought the matter to the attention of the Corporation Commission in an informal manner, but made no application to have rates or compensation prescribed, and no official action was taken by the Corporation Commission. In December, 1927, the Bell Company notified the Poteau Company of the termination of the contract of November 30, 1923, and filed with the Corporation Commission an application for approval of cancellation of that contract. On January 3, 1928, the Corporation Commission entered an order approving the cancellation of the contract, but no rates or charges were prescribed. On the same day the Poteau Company asked the Corporation Commission to fix the rates and charges for services to be rendered. At that time the two lines were in operation between Poteau and Fort Smith and the exchanges as hereinbefore stated and messages were being transmitted over each other's lines. The Poteau Company used its toll lines to Fort Smith and the Bell Company its line from Fort Smith to Poteau.

After this complaint was filed by the Poteau Company the Bell Company shipped a toll board to Poteau and installed the same at Poteau in a manner that would seem to indicate an intention not to disclose the fact that such action was being taken prior to the completion of the installation thereof. Upon the completion of the installation of the toll board the Bell Company looped its toll lines through the toll board at Poteau and advised the Poteau Company that the Bell Company would operate its own toll or long distance switch board and collect its own long distance revenue thenceforth, and disconnected the long distance line of the Poteau Company at Fort Smith, thereby requiring the use of the Bell toll line for all calls between Poteau and Fort Smith and preventing the use of the toll line of the Poteau Company between Poteau and Fort Smith. The Bell Company then gave notice to the Poteau Company that no compensation would be paid the Poteau Company.

The result of this was to require the Poteau Company to furnish its service without compensation from the Bell Company or to require the citizens of Poteau to go to the office of the Bell Company in order to have toll service to Fort Smith or through Fort Smith to other places. Since that time the Poteau Company has permitted the use of its facilities and has received no compensation therefor. The Bell Company has continued to refuse to connect the Poteau Company toll line with its exchange at Fort Smith.

On January 30, 1928, the Poteau Company filed a supplemental complaint requesting the Corporation Commission to order a restoration of the service as it existed prior to January 22, 1928, and to fix temporary rates of compensation pending the final hearing and to require the Bell Company to restore the physical connection at Fort Smith.

The Bell Company contends that it has a right to handle its own business at Poteau, "leaving, however, available the connection for the convenience for all patrons of the Poteau Company who might desire to use the connection rather than to come directly to the Bell toll office to talk over the Bell lines," and that it had a right to discontinue the connection at Fort Smith, leaving its own toll line available for communication with Fort Smith or points beyond.

Upon the hearing of the application for a temporary rate the Bell Company contended that the Poteau Company was indebted to it in the amount of approximately $4,000 and that the installation of the toll board in Poteau was for the reason that the Poteau Company had not paid the indebtedness. The Bell Company proposed to remove its toll board or resume switching arrange-

ments at Poteau provided the Poteau Company would pay the amount claimed and give security for the payment of the future amounts. The Poteau Company denied any liability and contended that it had been injured by the arbitrary refusal of the Bell Company to maintain connections with its line at Fort Smith, and the amount of the damage resulting therefrom was equivalent to the claim of the Bell Company, and that the Bell Company should be required to install and maintain the physical connection at Fort Smith.

The Corporation Commission made a temporary order directing the Poteau Company to settle with the Bell Company; the Bell Company to remove its toll board from Poteau and to restore the service between its toll line and the Poteau exchange at Poteau upon the payment of the amount claimed by the Bell Company; that after the restoration of the connections the business should be handled on the basis of "3, 4 and 15 per cent." until further order; that the Bell Company be permitted to retain all money collected through the operation of its toll board at Poteau from the time it was installed until the time the same should be discontinued and that the Bell Company pay one and one-half times the business rate charged for service in the city of Poteau for each trunk line maintained and operated until the discontinuance of the toll board. No order was made with reference to the installation of the exchange connection at Fort Smith, Ark.

The Poteau Company did not comply with this order, but elected to treat the same as conditional. Thereafter the Corporation Commission entered its order requiring the Poteau Company to pay to the Bell Company $4,982.91 to cover the amount alleged to be due to the Bell Company to the 20th day of April, 1928; requiring the Bell Company, within five days after the payment of the amount of indebtedness, to restore the physical connection of its toll lines with the Poteau exchange and the service as it existed prior to January 22, 1928; to thereafter handle the business on the basis of "3, 4 and 15 per cent." and a division of the remainder on a line haul basis, and that until the restoration of the service as it existed prior to January 22, 1928, the Bell Company should pay for each trunk line maintained and operated one and one-half times the business rate charged for such service in the city of Poteau.

Section 5, art. 9, of the Constitution of Oklahoma reads:

"All telephone and telegraph lines, operated for hire, shall each, respectively, receive and transmit each other's messages without delay or discrimination, and make physical connections with each other's lines, under such rules and regulations as shall be prescribed by law, or by any commission created by this Constitution, or any act of the Legislature, for that purpose."

In construing that section this court, in Pioneer Telephone & Telegraph Co. v. State, 71 Okla. 305, 177 Pac. 580, said:

"The language of the Constitution requiring a physical connection of the lines is mandatory, but it follows, naturally that such connection must be made so as not to destroy property rights, and so as to be reasonable and just to both companies.

"The right of one telephone company to connect its lines with that of another company implies no more than a mechanical union of the lines, so as to admit of the convenient passage of messages from one to the other, and does not include the right to compel business intercourse between two competing companies to the detriment of either company. The lines are to be connected, not the companies, and the purpose is to establish and maintain means for a continuous transmission of messages for the benefit and convenience of the public."

That case follows the rule announced in Pioneer Telephone & Telegraph Co. v. State, 38 Okla. 554, 134 Pac. 398, that rules and regulations prescribed by the Commission must be reasonable and just.

In Pioneer Telephone & Telegraph Co. v. State, 77 Okla. 216, 186 Pac. 934, there was the additional holding that rules and regulations must be fair and not work a detriment to the company with which the connection is directed.

In Pioneer Telephone & Telegraph Co. v. State, 78 Okla. 38, 188 Pac. 107, it was said:

"The Corporation Commission has authority to require two telephone companies to establish a physical connection between their exchanges and toll lines, so as to permit a continuous transmission of messages, for the benefit and convenience of the public, and under rules and regulations which are fair and which do not work a detriment to either company, or a discrimination against the subscribers of either company."

The purpose of section 5, art. 9, supra, is well expressed by the defendant as follows:

"It was intended to give people of one section of the state an opportunity to communicate with people in another section of the state, even though the systems for communication were owned by different com-

panies and even though disagreements might arise, as they frequently do, between the private owners of the different lines offering communication."

In our opinion that section requires a continuance of service from the lines of the Bell Company to those of the Poteau Company and from the lines of the Poteau Company to those of the Bell Company without regard to any dispute between the Bell Company and the Poteau Company as to rates, charges, rules, or regulations, and we so hold to the end that the public may have an opportunity to carry on its ordinary and customary business by means of the telephone facilities of the state and that the rights and the exercise thereof are superior to the rights of either of the owners of the contending companies, subject only to payment of reasonable compensation therefor.

Section 18, art. 9, of the Constitution provides, in part:

"The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations and requirements, the Commission may, from time to time, alter or amend. All rates, charges, classifications, rules and regulations adopted, or acted upon, by any such company, inconsistent with those prescribed by the Commission, within the scope of its authority, shall be unlawful and void. * * * Before the Commission shall prescribe or fix any rate, charge or classification of traffic, and before it shall make any order, rule, regulation, or requirement directed against any one or more companies by name, the company or companies to be affected by such rate, charge, classification, order, rule, regulation, or requirement, shall first be given, by the Commission, at least ten days' notice of the time and place, when and where the contemplated action in the premises will be considered and disposed of, and shall be afforded a reasonable opportunity to introduce evidence and to be heard thereon, to the end that justice may be done, and shall have process to enforce the attendance of witnesses; and before said Commission shall make or prescribe any general order, rule, regulation, or requirement, not directed against any specific company or companies by name, the contemplated general order, rule, regulation, or requirement shall first be published in substance, not less than once a week, for four consecutive weeks, in one or more of the newspapers of general circulation published in the county in which the Capitol of this state may be located, together with the notice of the time and place, when and where the Commission will hear any objections which may be urged by any person interested, against the proposed order, rule, regulation, or requirement; and every such general order, rule, regulation, or requirement, made by the Commission, shall be published at length for the time and in the manner above specified, before it shall go into effect, and shall also, so long as it remains in force, be published in each subsequent annual report of the Commission. * * * "

Since the adoption of the above provisions of the Constitution telephone companies operating in this state have been required to establish physical connection with other companies and to receive and transmit messages over each other's lines. Disputes and disagreements have arisen between the owners of properties as to the terms and conditions for the connection of their lines. No rules or regulations governing the connection of the lines have been prescribed by law, and if any such rules or regulations or rates or charges are prescribed, they are to be found in the proceedings of the Corporation Commission.

The defendant contends that Corporation Commission order No. 912 is an order fixing rates and charges. Plaintiff denies that contention and contends that the Corporation Commission has never prescribed rates and charges for services rendered by connecting carriers and has always permitted the connecting companies to make contracts for the rates and charges for that service.

The Poteau Company contends that the Corporation Commission was without jurisdiction to make an order directing it to pay the Bell Company the sum of $4,982.91, or to determine whether it was indebted to the Bell Company in any sum; that the contract of 1923 was void and unenforceable; that the Commission had no jurisdiction to order the complainant to pay the Bell Company, either by reason of a contract or by reason of any order of the Commission; that there was no competent evidence to support the finding as to the amount of money to be paid, and that the Corporation Commission had no jurisdiction to make the payment of

any sum of money a condition precedent to installing the service at Poteau.

The Poteau Company further contends that it is entitled to greater compensation than provided by the "3, 4 and 15 per cent." order; that that order does not provide adequate compensation, and that the allowance of one and one-half times the business rate is not sufficient and is unreasonable and arbitrary.

The Poteau Company further complains that the order requiring the Poteau Company to give the Bell Company physical connection at Poteau with its exchange and requiring the Poteau Company to furnish its facilities for the use of the Bell Company without requiring the Bell Company to restore physical connection with the exchange at Fort Smith, is unreasonable and arbitrary and deprives the Poteau Company of its property without due process of law in violation of the Constitution of the United States.

The Bell Company contends that the Corporation Commission is without authority to order a restoration of the connection at Fort Smith or to make an order for the restoration of the connection at Poteau conditional upon the restoration of the connection at Fort Smith. The Poteau Company contends that if the Corporation Commission has authority to make restoration of the connection at Poteau conditional upon the payment of money, it has authority to make the order of restoration of the connection at Poteau conditional upon the restoration of the connection at Fort Smith.

It is the contention of the Bell Company that as long as it was able to agree with the Poteau Company as to the terms of the connection of the lines " * * * there was no necessity for the exercise of the police power of the state. * * * " We do not agree with that contention. The Constitution is not a coat to be put on only when needed, but is protection to the people of the state at all times. The two sections of the Constitution hereinbefore quoted are operative and have been operative since the adoption of the Constitution and were in effect whether the Bell Company and the Poteau Company agreed as to the terms of the connection of their lines or not.

The record shows that neither of the parties sought to take advantage of the rights guaranteed by the Constitution to have rates fixed, but preferred to operate under an agreement which, for a time, was satisfactory to both parties.

Corporation Commission order No. 912 reads as follows:

"To All Telephone Companies:

"Proposed Order No. 136, which was duly published as required by law, provided that where any telephone companies had entered into verbal or written agreement with the connecting telephone company for the transmission of toll or long distance messages they shall continue such agreement, and shall, on or before the 20th day of the succeeding month in which such business originated, make remittance to the connecting company for all such business under the terms of such agreement, and shall continue any such connections, they might have for such purpose with the connecting company, until such time as they may be relieved by application for an order of the Commission granting such relief.

"Since the hearing on the proposed order complaints have been placed on file asking the Commission to fix the division of tolls between different companies.

"It is hereby ordered that all telephone companies shall continue joint traffic arrangements and agreements mutually entered into for the transmission of messages and that settlement shall be made with the company owning the long distance line by the 20th of the succeeding month in which the business was transacted and that said settlement shall be made on the basis of the mutual agreement in reference to the division of tolls between the long distance lines and exchanges, or if with the Pioneer Telephone & Telegraph Company, settlement may be made either on the basis of the new proposition submitted to the various telephone companies by the Pioneer Telephone & Telegraph Company, or on the last mutual working arrangement at the election of the owner of the exchange.

"That this order shall remain in full force and effect until changed by order of the Commission, after complaints and hearing asking the Commission to apportion revenues for long distance service between exchanges and the long distance lines. Upon final order of the Commission fixing the division of toll revenues between exchanges and toll lines, if the long distance lines have collected any amount in excess of that prescribed by the order making the division of the long distance revenue, the same shall be immediately refunded to the exchange entitled thereto, or if any exchange has been paid more than is authorized by the final order of the Commission, it shall refund to the long distance companies.

"Oklahoma City, Oklahoma, March 20, 1915."

Paraphrasing order No. 912, and applying it to railway companies, we have the following: "It is hereby ordered that all railway

companies shall continue to transport freight under the arrangements and agreements with shippers mutually entered into." Could anyone say that that was the fixing of a rate? "It is hereby ordered that settlement shall be made either on the basis of the new proposition submitted to the shippers by the railway company, or on the last mutual arrangement at the election of the shipper." Could that be of any benefit to the shipper? His rights would be limited to the existing agreement or to the new proposition submitted by the railway company. He would be deprived of any right to make a proposition or to procure a new rate other than that submitted by the company. The purpose of providing for a fixed rate is to give each party authority to say something as to what the rate should be and to provide for a reduction in rates if a reduction is warranted. The evident purpose of the Constitution is to have a rate fixed by a governmental agency that will speak for itself and that will not require the assent of any of the parties affected thereby.

An examination of order No. 912 discloses that there is nothing in it that can be construed as the fixing of a rate. The effect of that order is to leave the determination of the compensation to a contract either existing or to be thereafter agreed upon.

The purpose of the constitutional provision was to prevent this very thing. The makers of the Constitution foresaw that rates agreed upon by the companies might not be for the best interest of the people, and for that reason the Corporation Commission was not only authorized but was directed to fix rates.

In Oklahoma Natural Gas Co. v. Corporation Commission of Oklahoma, 111 Okla. 6, 237 Pac. 838, the record shows that the Corporation Commission had fixed a rate. No decision of any court is cited where a refund has been ordered by the Corporation Commission in the absence of a rate fixed by the Corporation Commission.

A number of Corporation Commission orders are cited, but they are not sufficient to establish any such rule. When the Corporation Commission fails to function and to perform its duties in the matter of fixing rates and where it is content to permit companies to contract as to rates, it cannot assert or exercise jurisdiction to determine that an amount has been collected in excess of the one contracted.

Corporation Commission order No. 1668

provides for a bond of indemnity and nothing else. It does not, upon its face, or otherwise, purport to fix rates.

The first question for our consideration is whether or not the Corporation Commission has fixed a rate for the service rendered in the maintenance of the connections between the lines of the Bell Company and those of the Poteau Company at Poteau.

It is our opinion that Corporation Commission order No. 912 does not fix such rates, and that the Corporation Commission, order No. 1668 does not fix such rates, and that the Corporation Commission of Oklahoma, prior to the entry of its preliminary order herein, had not fixed a rate for that service.

The Corporation Commission, being charged with the responsibility of fixing rates, may determine, in a proper case, when an excess of rate has been collected, and then order a refund of the excess collected, but before it may exercise that jurisdiction it must first fix a rate, and the determination of whether or not an excess of rate has been collected requires a determination of whether or not more has been collected than the rate authorized by the Corporation Commission to be collected.

The Corporation Commission is without jurisdiction to determine that a connecting company has collected more than it agreed to charge in a contract made between it and the connecting company. That is a matter over which the Corporation Commission has no control, and can be adjusted only in a court having jurisdiction thereof.

The act of the Bell Company in severing the physical connection between the lines of the Poteau Company and the exchange of the Bell Company at Fort Smith may or may not have resulted in a loss to the Poteau Company. If it has resulted in a loss, the Poteau Company is entitled to recover the amount thereof. The Corporation Commission has no jurisdiction to determine that amount, and under the statutes of Oklahoma that claim is a counterclaim which the Poteau Company would have a right to plead in an action by the Bell Company for the recovery of any amount due under its contract with the Poteau Company.

As to the merits of that controversy we express no opinion other than to say that all of those issues growing out of the contract under which the Poteau Company and the Bell Company were operating may be determined in a court of competent jurisdiction.

Since the Corporation Commission has attempted to exercise a jurisdiction that it does not have to determine that the Poteau Company has received more than it agreed to receive in its contract with the Bell Company, that order is void, and, compliance with that order having been made a condition precedent to the enforcement of the remainder of the order, the Poteau Company was authorized to refuse to comply with the remainder of the order.

The Corporation Commission of Oklahoma is as powerless to require a physical connection between the lines in Arkansas as it is to require the Poteau Company to pay the Bell Company any amount where the Corporation Commission has not fixed a rate. It has no jurisdiction to make either order. But, it is said, how will the connection be re-established at Fort Smith? The answer is that that must be controlled by the court or commission having jurisdiction under the laws of the state of Arkansas.

The order of the Corporation Commission denies the application of the Poteau Company to fix rates on the ground that that company has failed to show the necessity for increased compensation.

This court will not examine the evidence to determine those facts. The burden is not on the Poteau Company to show a necessity for increased compensation. No rate has ever been fixed by the Corporation Commission, and until a rate is fixed by the Corporation Commission the application of the Poteau Company to fix rates cannot be considered an application for increased compensation.

Since no rates have been fixed, the burden is neither on the Poteau Company nor the Bell Company. The responsibility is upon the Corporation Commission to hear the evidence and establish a rate.

For that reason this court will not review the evidence to determine where the weight of the evidence is, in the absence of an order of the Corporation Commission fixing rates.

The Bell Company is operating a toll board at Poteau in violation of the Constitution of Oklahoma. It installed that toll board surreptitiously and in the nighttime. The Corporation Commission has ordered it removed, but has made the order conditional upon the performance of a thing that the Corporation Commission had no authority to order. The order for the removal of the Bell Company toll board at Poteau should have been unconditional, and the Corpora-

tion Commission is directed to make an order to that effect. The order for the restoration of the services was likewise conditional, and an absolute order should be entered for the restoration of that service.

With the entry of those two orders and the performance of those duties the people will have restored to them the service as it existed prior to the arbitrary action of the Bell Company.

But it is said that the Bell Company cannot be required to make this connection and render this service without compensation. We agree with that contention, and for that purpose the Corporation Commission should enter an unconditional temporary order fixing the rates to be charged pending the hearing of evidence and fixing a rate. That order should provide for re-adjustment of the charges after the fixing of the rate. It should also provide for payment at stated intervals, and the payment thereof may be required to be secured by execution of good and sufficient bonds.

It is contended that 5 per cent. allowed the Poteau Company for handling money taken from the coin boxes was compensatory in that all the Poteau Company had to do was to go to the coin box, unlock it, take out the money and count it. We think that statement is not supported by any evidence. The Poteau Company had to maintain a telephone line connecting that coin box with its circulation. It had to provide for the operation of that line, and it is certainly entitled to some compensation for its investment in that line. While we do not pass on whether or not 5 per cent. is sufficient for this service, we call attention to it for the reason that that is one of the many elements to be taken into consideration by the Corporation Commission in fixing rates that have not been considered by the Corporation Commission.

In the absence of a rate fixed by the Corporation Commission without conditions attached thereto, this court will not attempt to review the evidence or to determine on what theory the rate should be fixed, and we express no opinion as to whether or not there should be a difference in rate as applied to station to station or person to person calls.

There are portions of the order complained of that could be sustained, but in view of the erroneous conclusion reached by the Corporation Commission as to its jurisdiction and power and as to the rights of the parties, we deem it advisable to remand

84

the entire matter, with directions to enter an order in conformity herewith and to proceed to fix rates as herein provided.

MASON, C. J., and CLARK, HEFNER, CULLISON, and SWINDALL, JJ., concur. LESTER, V. C. J., and HUNT and RILEY, JJ., absent.

Note.—See under (1) anno. 43 L. R. A. (N. S.) 550; 11 A. L. R. 1204 16 A. L. R. 352; 26 R. C. L. p. 520; R. C. L. Perm. Supp. p. 5781. See "Telegraphs and Telephones," 37 Cyc. p. 1610, n. 57; p. 1629, n. 63; p. 1630, n. 77.