J.C. HAIR, Lavelle Hair, Jessie J. Lawson, Lois Ardell Lawson, W.F. Weger, Frances Weger, and Nora Lee Price, Appellants,

v.

OKLAHOMA CORPORATION COMMISSION, Hamp Baker, Norma Eagleton, and James B. Townsend, Commissioners, Appellees.

Nos. 58060, 58346.

Supreme Court of Oklahoma.

June 16, 1987.

Charles Nesbitt, Oklahoma City, for appellants.

M. Keywood Deese, Conservation Atty., Gretchen P. Hoover and Laurie A. Williams, Asst. Conservation Attys., Oklahoma Corp. Com'n, Oklahoma City, for appellee.

Robert J. Emery, Oklahoma City, for applicant Kerr-McGee Corp.

HODGES, Justice.

On August 26, 1981, Kerr-McGee Corporation filed an application, Cause C.D. No. 86441, with the Oklahoma Corporation Commission (Commission) to amend previous spacing orders to extend the boundaries of various common sources of supply and to establish proper 640–acre drilling and spacing units for said formations underlying certain sections of land in Grady and Comanche Counties for the production of gas and gas condensate. In its spacing extension application, Kerr-McGee specifically requested "that said Order be made effective the date of the filing of this application and in no event later than the date of hearing said application."

In compliance with the legislative requirements then in force, 52 O.S.Supp.1982 § 87.1(a),[1] and Commission Rule 12(b), the Commission gave notice of the scheduled October 20, 1981, spacing extension application hearing solely by publication in Grady, Comanche and Oklahoma Counties. The published notice expressly stated the effective date of the proposed order was requested to be the date of the filing of the spacing extension application and in no event later than the date of the hearing on the application. No other notice was ever sent to the owners of minerals or other oil and gas rights affected by the determination of Kerr-McGee's application. Appellants are owners of a mineral interest in the spacing extension area and are specifically affected by the application inasmuch

1. This statutory notice requirement was not changed by amendments to the statute in 1984 and 1985. Okla.Sess.L.1984, Ch. 58 § 1 and Okla.Sess.L.1985, Ch. 141 § 2.

as the primary term of their lease expired after the date of filing the spacing extension application but before the date of the scheduled hearing and order rendered thereon.

Kerr-McGee's application sought an emergency hearing and was assigned for adjudication to the Administrative Review Panel (Panel), within the Commission under 17 O.S.1981 § 21–24 and 52 O.S.1981 § 1.[2] A hearing was held on October 20, 1981. Upon Kerr-McGee's emergency motion to reopen the record before the Panel, a subsequent hearing was held on October 30, 1981, to consider the effective date of the spacing order. One of the reasons expressed for the requested back-date of the Panel order's effectiveness was the termination of a certain lease while the Commission's spacing extension process was pending. In particular, the primary term of appellants' lease to a non-operating working interest owner which had indicated an interest to join with Kerr-McGee in exploration in the area would expire after the application was filed but before the order would be issued thereon unless the order was made effective prior to that date. On November 3, 1981, the Panel voted to grant the creation of spacing units in the requested area and issued Order No. 201716, effective August 26, 1981, the date Kerr-McGee's application was filed. The Panel order recited:

"That the evidence reflects the geological opinions expressed by the expert witness testifying in behalf of Applicant were applicable as of August 26, 1981; that the evidence reflects that severe economic loss would be incurred through loss of otherwise valid oil and gas leases by parties owning such leases within the spacing extension area in the event the Order herein is not made effective as of August 26, 1981; and that distortion of correlative rights and waste of petroleum hydrocarbons will not be caused by making the Order herein effective as of August 26, 1981."

On November 2, 1981, the Attorney General of Oklahoma issued Opinion No. 81–47 in which he declares the 1980 legislative enactment creating the Panel an unconstitutional transfer of the power and authority of the Commission to the Panel, and an unconstitutional grant to the Commission of the power to delegate its discretionary powers to a general deputy. The Commission alleges on appeal it did not receive notification of the subject of the Attorney General's Opinion until the afternoon of November 4, 1981, after the Panel order was issued.

The Commission en banc subsequently approved and adopted the Panel's spacing extension order in Cause G.D. No. 27016 in a monthly adoption procedure of all Panel orders issued which were no longer subject to appeal. This procedure had been followed after the passage of the enactment because of the uncertainty as to its constitutionality. The record discloses that when the Kerr-McGee cause came up for adoption it was protested. Therefore it was pulled off the general order numbers and an individual order was prepared addressing only the Kerr-McGee order. Commission Order No. 206198 adopts the drilling and spacing order of the Panel, "as though said order was entered by the Commission on the effective date of said order." The body of that order indicates August 26, 1981, as the effective date of the Panel order; however, the schedule at the end of the order recites the effective date as "8–16–81." Consequently, the Commission thereafter issued Order No. 210583, Order Nunc Pro Tunc, correcting the obvious clerical error in its former Order No. 206198, to reflect the Panel order's proper effective date as August 26, 1981, the date the application was filed.

J.C. Hair, Lavelle Hair, Jesse J. Lawson, W.F. Weger, Frances Weger, and Nora Lee Price (appellants) brought this consolidated appeal from the two separate orders entered by the Commission which adopt the Panel's spacing order. The essential issues

**2.** 17 O.S.1981 §§ 21–24 was repealed in 1982. Okla.Sess.L.1982, Ch. 354, § 11, operative July 1, 1982.

in this appeal turn on the validity of the Panel order subsequently adopted in the Commission orders here under review.

This appeal presents four primary issues for determination:

(1) Is the repealed statutory enactment, 17 O.S.1981 §§ 21–24 and 52 O.S.1981 § 1, which created within the Commission an Administrative Review Panel constitutional?

(2) Whether the publication notice for Kerr-McGee's spacing extension application and the hearings thereon is sufficient to vest the Panel and Commission with jurisdiction to enter and adopt, respectively, the order which establishes various drilling and spacing units.

(3) Whether the Panel's drilling and spacing order and the Commission's adoption orders are sustained by the law and substantial evidence.

(4) Whether the Commission had jurisdiction to issue the nunc pro tunc order which establishes the effective date of its prior order inasmuch as an appeal had been perfected from the former order and was pending before this Court.

While we hold the enactment unconstitutional, the Commission and Panel were acting under color of authority prior to actual notice of Attorney General's Opinion No. 81–47 and the Panel was then a de facto body; therefore, we find the challenged Commission orders valid. We answer the second question in the affirmative based on this Court's decision in *Harry R. Carlile Trust v. Cotton Petroleum*, 732 P.2d 438 (Okla.1987), which applies the standards of due process enunciated in *Cravens v. Corporation Commission*, 613 P.2d 442 (Okla. 1980), purely prospectively to affect those spacing units which were, as here, comprised of non-producing leaseholds. We answer the third and fourth questions in the affirmative.

## I.

The first issue appellants raise concerns the repealed 1980 statutory enactment creating the Administrative Review Panel.

Section 21 of the enactment provides that the Panel shall consist of three Deputy Commissioners and it shall hear such cases, and perform such duties, as are assigned to it by the Commission or by law.[3] The Commission may delegate any duty, power, responsibility or case to the Panel, as the Commission, in its discretion, sees fit. The Panel shall have jurisdiction to issue such writs, orders or any other process necessary to the performance of its duties in like manner as is provided to the Commission. The Commission may remove any case or proceeding from the Panel at any time and proceed to hear that case or proceeding. The Panel shall hear all exceptions from trial examiners' orders in oil and gas cases, and shall hear all emergency oil or gas cases. Under Section 24, the Commission has the discretionary power to reverse, modify, remand or approve, in whole or in part, any decision or ruling of the Panel.[4]

Appellants contend the repealed enactment is an unconstitutional delegation of discretionary powers granted exclusively to the Commission by the Oklahoma Constitution. Appellants rely on Attorney General's Opinion No. 81–47 which finds the 1980 legislative enactment unconstitutional. The opinion correctly concludes that none of the provisions contained in Okla. Const. Art. 9 §§ 18–34 granting the Commission its powers, duties and functions confer upon the Commission the power to delegate any part of its discretionary power to a panel. Appellants contend that because the delegation of power to the Panel by the Commission is unconstitutional, the order made by the Panel is void, and the subsequent orders of the Commission adopting the Panel order, which are the subject of this consolidated appeal, are likewise void.

The Commission does not dispute that the enactment is an unconstitutional transfer of the powers, duties and functions of the Commission to the Panel. But it argues the effect of the opinion of the Attorney General should apply prospectively, i.e., from actual notice to the Commission

---

**3.** 17 O.S.1981 § 21 (repealed 1982).

**4.** 17 O.S.1981 § 24 (repealed 1982).

of the opinion. It argues up until the time of actual notice the Commission and the Panel were acting under color of law.

Kerr-McGee's primary contention is that the enactment is constitutional. Although it concedes the Panel could not exercise constitutionally conferred powers and duties of the Commission, it urges us to interpret the enactment as an authorization of the Commission to transfer to the Panel certain powers and duties in the regulation and conservation of oil and gas which are statutorily imposed upon the Commission.

We cannot accept Kerr-McGee's argument for the following reasons. First, by transferring to the Panel the Commission's mandatory duty to exercise regulatory discretion conferred by Okla. Const. Art. 9 §§ 18 and 19, the enactment is inconsistent with such constitutional provisions. *Cf. Oklahoma-Arkansas Tel. Co. v. Southwestern Bell T. Co.*, 143 Okl. 76, 291 P. 3 (1930). Second, by authorizing the Commission to delegate its powers and duties to the Panel it contravenes the constitutional principle that the Commission, designed to be perpetuated in its existing form, is an aggregate of State officers, and when acting within the scope of its powers and jurisdiction, is a single composite body, and cannot act otherwise. Okla. Const. Art. 9 §§ 15 and 18a; *Crawford v. Corporation Commission*, 188 Okla. 101, 106 P.2d 806, 809 (1940). We are obliged to construe strictly the constitutional restrictions and limitations imposed upon the legislative power. *Wiseman v. Boren*, 545 P.2d 753 (Okla.1976).

 We therefore conclude the repealed 1980 legislative enactment creating the Panel is unconstitutional as it is inconsistent with Article 9, Sections 15, 18, 18a and 19 of the Oklahoma Constitution. However, we have repeatedly held an opinion of the Attorney General has prospective application only, and that it is the duty of administrative officers and bodies, such as the Commission, with notice thereof, to follow the opinion of the Attorney General until relieved of such duty by a court of competent jurisdiction, or until this Court should hold otherwise. *Aetna Cas. and Surety Co. v. State Bd., Etc.*, 637 P.2d 1251, 1254 (Okla.1981). The record before us reflects that actual notice to the Commission of the Attorney General Opinion which declares the enactment unconstitutional was received subsequent to the issuance of the Panel's order.[5] We therefore find under the particular facts of this case the Panel and the Commission were acting under color of law and the Panel was then a de facto body.

## II.

The second issue presented is whether the publication notice given for Kerr-McGee's spacing extension application and hearings thereon meets the minimum standards of due process, and thus vests jurisdiction in the Panel within the Commission to enter its order. In *Cravens v. Corporation Commission*, 613 P.2d 442 (Okla. 1980), this Court held the statutorily-prescribed notice form found in 52 O.S.Supp. 1982 § 87.1(a) inadequate for holders of producing mineral interests whose identities were known or could have been ascertained with due diligence. The statute only required notice by publication when a drilling and spacing order is sought. This Court found publication notice as insufficient to meet the standards set forth in *Bomford v. Socony Mobil Oil Co.*, 440 P.2d 713 (Okla.1968) and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The *Cravens* notice standard requires notice to be given by means reasonably calculated to inform all affected parties of instituted proceedings. Publication is insufficient where the names and addresses of affected parties are known or reasonably ascertainable.

In *Harry R. Carlile Trust v. Cotton Petroleum Corporation*, 732 P.2d 438

**5.** See Testimony of Keywood Deese, Conservation Attorney for the Commission, at Page 56, lines 16 and 17 of the transcript of hearing before the Commission on December 29, 1982, in Cause General No. 27016. At the time of the hearing, Ms. Deese's statement concerning the date the Commission received notice of the Attorney General's Opinion was not disputed or contested.

(Okla.1987), this Court extended *Cravens* to apply to non-producing mineral interests. The factual circumstances in *Cotton* resemble the present case, although it dealt with a collateral attack on a Commission spacing order. The appellants there held non-producing mineral interests which were adversely affected by the establishment of spacing units. The whereabouts of these non-producing interest holders were known or could have been ascertained with due diligence by the Cotton Petroleum Corporation. This Court found when a party's name and address is reasonably ascertainable from sources available at hand, communication by mail or other means certain to insure actual notice is deemed to be a constitutional prerequisite in every proceeding which affects either a person's liberty or property interests.

*Cravens* and *Cotton* preclude an administrative agency from asserting jurisdiction over persons whose interests may be adversely affected unless a diligent effort is made to give notice which is reasonably calculated to inform them of the proceedings. However, the rule in *Cotton* was given purely prospective application to all spacing units formed by the Commission after the effective date of the opinion and it left unaffected all spacing orders made prior to the opinion's effective date, except cases pending in the trial or appellate process in which a direct challenge is made to a spacing order embracing *areas under production.*

█ Publication notice is not an adequate means for informing non-producing and producing mineral interests of spacing proceedings where mineral holders' whereabouts are reasonably ascertained. Here, Kerr-McGee had actual notice of the appellants' mineral interest or could have exercised due diligence to ascertain the same. We thus find appellants' rights to due process were violated by inadequate notice of the pending application and hearings which affected their property rights under the standards of notice pronounced in *Cotton*

and *Cravens*. However, the challenged orders were made by the Commission prior to the effective date of *Cotton*, and the spacing units established by the Panel order which was adopted by the Commission orders are comprised of non-producing leaseholds. We therefore apply the prospective doctrine in this case as announced in *Cotton, supra.* Consequently, we are constrained to leave undisturbed the Panel spacing order and the Commission's adoption thereof in subsequent orders, as they are unaffected by the standards of due process announced in *Cotton* and *Cravens*.

### III.

The next issue presented is whether the Commission orders adopting the Panel drilling and spacing order, effective as of the date that Kerr-McGee filed its spacing extension application, August 26, 1981, are sustained by law and substantial evidence. This issue thus turns on whether the Panel order is supported by substantial evidence and the law.

It is fundamental the Commission has the power to establish well spacing and drilling spacing units "[t]o prevent or to assist in preventing the various types of waste of oil or gas prohibited by statute, or any of said wastes, or to protect or assist in protecting the correlative rights of interested parties...." 52 O.S.1981 § 87.1(a). It is also fundamental the provisions of 52 O.S.1981 § 87.1(d) [6] give the Commission jurisdiction "to enlarge the area covered by the spacing order, if such proof discloses that the development or the trend of development indicates that such common source of supply underlies an area not covered by the spacing order and such proof discloses that the applicant is an owner within the area covered by the application."

At the hearing on Kerr McGee's spacing extension application before the Panel on October 20th, a geologist expert witness testified in behalf of Kerr-McGee concerning the development to the effect that each of the common sources of supply underlies

**6.** Subsequent amendments to § 87.1 in 1982, 1984 and 1985 did not change the pertinent

provisions of § 87.1(a) and (d).

all or substantially all of the land involved and is not covered by the previous spacing orders. In addition, the geologist specifically testified at the subsequent hearing on October 30th, his prior geological opinions testified to at the October 20th hearing are also applicable as of the date the application was filed, August 26th. His testimony was not contested at either hearing.

Furthermore, Kerr-McGee's application requested the spacing order be made effective the date of the filing of the application and in no event later than the date of the hearing on the application. This request was also reflected in the legal publication notice of the spacing application and hearing thereon.

■ This Court in *Union Oil Co. of California v. Brown*, 641 P.2d 1106, 1109 (Okla.1982), recognized the Commission has jurisdiction to issue an order effective after an application is filed so long as the determination to predate is supported by substantial evidence. The *Brown* case dealt with the statutory authority under another provision of § 87.1(d) to decrease unit size or to permit additional wells, and requires a different standard of proof, i.e., that such action will prevent or assist in preventing waste, or protect or assist protection of correlative rights of interested parties. This Court determined although the Commission had the power to make the order effective the date the applicant filed its increased density application, the record did not contain evidence to support that effective date. Under the statutorily mandated proof involved in this case regarding the enlargement of the unit size, Kerr-McGee met its burden of proof. We conclude the expert witness's testimony constituted competent and substantial evidence to support the Panel order effective as of the time relief was first requested. *Cf.*

*Anderson-Prichard Oil Corp. v. Corporation Com'n,* 205 Okl. 672, 241 P.2d 363, 371 (1951).

Inasmuch as the Panel order is lawful and supported by substantial evidence, we find the order valid. We are unpersuaded by appellants' argument the Panel order impermissibly affected their private leasehold rights. Because the action taken in the Panel order and adopted in the challenged Commission orders is statutorily authorized, we find no merit in appellants' argument such action adversely affected their property rights.[7] It is well settled in Oklahoma "the oil and gas conservation statutes are an exercise of the police power of the State and through the exercise of that power, vested rights may be affected." *Brown,* 641 P.2d at 1110 n. 2 (citing *Anderson-Prichard Oil Corp., supra*). The statutory provision authorizing the Commission to increase the unit size was incorporated in appellants' lease by operation of law for the reason that provision was in existence at the time the lease was executed.[8] *Layton v. Pan American Petroleum Corporation,* 383 P.2d 624, 627 (Okla.1963). Thus, the action of the Commission, a proper exercise of the police power, does not unnecessarily impair appellants' property rights.

We thus find the Commission orders adopting the Panel spacing order which creates the drilling and spacing units are sustained by the law and by substantial evidence.

IV.

■ Lastly, we address appellants' assignment of error which argues the Commission had no jurisdiction to issue the nunc pro tunc order which establishes the effective date of its prior order as of August 26th for the reason that an appeal had

---

**7.** *Kuykendall v. Helmerich & Payne, Inc.,* (Sup.Ct. No. 56,374) (June 16, 1987), —— P.2d —— (Okla.1987), decided this day, is entirely consistent with our pronouncement herein. In *Kuykendall,* we held "[t]he combination of the commence clause in the lease and the statutory provisions of § 87.1(e) for formation of a drilling and spacing unit have the legal effect of continuing a lease where drilling is commenced to the common source of supply named in a

pending drilling and spacing application if the well so commenced is completed as a producing well."

**8.** Title 52 O.S. § 87.1 was enacted in 1947 (Okla. Sess.L.1947, p. 328, § 1). Appellants' lease was executed on October 8, 1976, by their predecessors in title, for a primary term of five years.

been perfected from the former order and was pending before this Court. The Commission is considered a court of record when functioning in an adjudicative capacity,[9] and thus may correct its orders by nunc pro tunc. The function of a nunc pro tunc order has been described many times by this Court. In *Woodmansee v. Woodmansee*, 137 Okl. 112, 278 P. 278, 280 (1929), quoted in *Kuykendall v. Corporation Commission*, 597 P.2d 1221, 1223 (Okla.Ct.App.1979), we stated:

> "The function of such a proceeding is to put upon the record a true memorial of what did indeed occur in the litigation of the case, but about which the journal of the court speaks either imperfectly or incorrectly or else is silent. It cannot properly be made the means of patching up a defective record by injecting therein something that did not occur. It may speak of that which was, but it cannot invent that which was not." (quoting *Frederick & Nelson v. Bard*, 66 Or. 259, 134 P. 318 (1913)).

*See also Mullins v. Ward*, 712 P.2d 55, 60 n. 9 (Okla.1985). The Commission, when exercising its authority to act as a court, has jurisdiction to make an order nunc pro tunc while an appeal is pending in the Supreme Court when such order does not materially affect the rights of the parties to the appeal. *Cf. Matter of Chad S.*, 580 P.2d 983, 984 (Okla.1978).

■ Here, the order nunc pro tunc does not change the substance of appellants' pending appeal of the Commission's initial adoption order. The Commission's second order merely corrects an obvious typographical error contained in the former order. The adoption order specifically states the effective date would be the same date as the Panel's date:

> "[T]hat the effective date of said order be August 26th, 1981, which is the date the application was filed. The Corporation Commission herein adopts the Order No. 201716 as though said order was

entered by the Commission on the effective date of said order."

However, the scheduled listing shows the effective date as August 16th, rather than August 26th. Consequently, the order nunc pro tunc does not render a different judgment than what had previously been determined; thus, it does not materially affect appellants' rights. The order nunc pro tunc merely corrects the prior adoption order to comport with the decision the Commission had previously made.

Commission Orders No. 206198 and 210583 AFFIRMED.

HARGRAVE, V.C.J., and LAVENDER, OPALA and ALMA WILSON, JJ., concur.

SIMMS, J., concurs in judgment.

KAUGER, J., concurs in Parts I, III and IV and concurs in Part II by reason of stare decisis.

SUMMERS, J., concurs in part, dissents in part.

DOOLIN, C.J., dissents.

---

9. Okla. Const. Art. 9, § 19; *Monson v. State ex rel. Okl. Corp. Com'n.*, 673 P.2d 839, 842 (Okla. 1983).