**FROZEN FOOD EXPRESS,**
Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants.

Civ. A. No. 8747.

United States District Court
S. D. Texas, Houston Division.
Dec. 30, 1955.

618

Phinney & Hallman (Carl L. Phinney and Leroy Hallman), Dallas, Tex., for plaintiff.

Stanley N. Barnes, Asst. Atty. Gen., James E. Kilday and James H. Durkin, Sp. Assts. to the Atty. Gen., and Malcolm R. Wilkey, U. S. Atty., and Gordon J. Kroll, Asst. U. S. Atty., Houston, Tex., for defendant United States.

Robert W. Ginnane, General Counsel, and Leo H. Pou, Associate General Counsel, Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Before HUTCHESON, Circuit Judge, and CONNALLY and INGRAHAM, District Judges.

INGRAHAM, District Judge.

This is a suit brought under the provisions of Title 28, §§ 2321–2325, inclusive, U.S.C., to set aside and annul a report and order of the Interstate Commerce Commission and to order and direct the Interstate Commerce Commission to issue to plaintiff a certificate of public convenience and necessity. The case was heard by a statutory three-judge court under the provisions of Section 2325.

On December 10, 1951, Frozen Food Express filed an application with the Interstate Commerce Commission for a certificate of public convenience and necessity, seeking authority as a common carrier by motor vehicle to transport meat, meat products and meat by-products and dairy products over irregular routes between Amarillo, Texas, on the one hand, and on the other, points in California. The application was set for hearing on June 19, 1952, at Dallas, Texas, before an Examiner for a recommended appropriate order. The only protesting carriers were the Atchison, Topeka and Santa Fe Railway Company, Southwest Railroad Association, and Railway Express Agency, Inc. No motor carriers appeared in protest of the application.

Frozen Food Express held certificates authorizing it to transport such products (1) over. irregular routes between all points in Texas, Louisiana, Illinois, Michigan, Oklahoma, Missouri and Arkansas, and (2) over irregular routes between points in California, on the one hand, and, on the other, points in Louisiana and those in Texas on and east of a line beginning at the Oklahoma-Texas state line and extending along U. S. Highway 83 to the junction of U. S.

Highway 290, thence along U. S. Highway 290 to Sonora, Texas, thence along U. S. Highway 277 to the United States-Mexico border line. Under the latter certificate it can transport such products between Shamrock, Texas (ninety-six miles east of Amarillo) on U. S. Highway 83 and points in California. Under the existing certificates shipments cannot be carried by plaintiff directly from Amarillo to points in California, but are carried from Amarillo eastward to Shamrock, and from Shamrock (back through Amarillo) to points in California. This route from Amarillo to California is approximately one hundred and ninety-two miles longer than the direct route sought by plaintiff.

On August 8, 1952, the examiner, James I. Carr, submitted his recommended report and order finding that upon consideration of all of the evidence of record that the present and future convenience and necessity required operation by Frozen Food Express as a common carrier by motor vehicle in interstate or foreign commerce of the commodities classed as "meats, meat products and meat by-products" from Amarillo, Texas, to points in California over irregular routes.

On August 28, 1952, protesting railroads, within the time allowed by law and by virtue of the rules of the Interstate Commerce Commission, filed their exceptions to the examiner's report and order, and a reply to said exceptions was filed by plaintiff timely and in accordance with the laws and rules and regulations of the Commission.

On March 4, 1953, Division 5, an Appellate Division of the Interstate Commerce Commission, Commissioner Lee dissenting, entered its report denying plaintiff's application in its entirety and overruling all of the findings and recommended order of the examiner. It is this order of the Commission to which plaintiff objects and prays that it be set aside and annulled.

 We accept as binding authority the opinion in Red Ball Motor Freight v. Herrin Transportation Company, D.C., 98 F.Supp. 248, 250, affirmed per curiam 341 U.S. 938, 71 S.Ct. 1002, 95 L.Ed. 1365, and the cases cited therein. It supports the proposition that a court may not set aside the order of a fact-finding administrative body, acting within the field of its designated powers, unless such order is illegal, capricious **or** unsupported by fact, and that the rule applies with even greater force to the findings of the Interstate Commerce Commission, because of the very nature and purpose of its creation. The following is quoted therefrom:

" 'The purpose of Congress was to leave the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity * * * this of course gives administrative discretion to the Commission * * * to draw its conclusions.' Chesapeake & Ohio Railway Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824; Powell v. United States, 300 U.S. 276, 287, 57 S.Ct. 470, 81 L.Ed. 643; McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544. 'Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done.' United States v. Pierce Auto Freight Lines, 327 U.S. 515–536, 66 S.Ct. 687, 698, 90 L.Ed. 821.

"Authorities touching upon this phase of the law have been so fully and thoroughly discussed in Lang Transportation Corporation v. United States, D.C., 75 F.Supp. 915, 927, that we adopt, in part, the reasoning of Judge O'Connor in said case:

" 'The Commission is the guardian of the public interest in determining whether certificates of convenience and necessity shall be granted. For the performance of that function the Commission has been entrusted with a wide range of dis-

cretionary authority. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051. *Its function is not only to appraise the facts and to draw inferences from them but also to bring to bear upon the problem an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies.'* (Emphasis supplied.)"

And quoting from United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 698, 90 L.Ed. 821:

"We think the court misconceived not only the effects of the Commission's action in these cases but also its own function. It is not true, as the opinion stated, that ' * * * the courts must in a litigated case, be the arbiters of the paramount public interest.' This is rather the business of the Commission, made such by the very terms of the statute. The function of the reviewing court is much more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law."

Guided thereby, we direct our inquiry to whether the report and order of the Commission is illegal, capricious or insufficient in fact. From a review of the evidence, without detailing it, we are unable to reach any such conclusion. The Commission acted within the scope of its authority, and its order may not be set aside, modified or disturbed by a court of review even though the court may not agree with the decision or may consider that the evidence would warrant a different conclusion. Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308; Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260; Rochester Telephone Corp. v. United States, 307 U.S. 125, 139, 59 S.Ct. 754, 83 L.Ed. 1147; Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456.

We find that the Commission acted within the scope of its authority and that it acted without unreasonable abuse of its discretion and that there were adequate facts to support its findings.

Plaintiff's complaint will be dismissed. Clerk will notify counsel to draft and submit appropriate decree.