**YOUNGER BROTHERS, INC., et al.,**
**Plaintiffs,**

v.

**UNITED STATES of America and Inter-**
**state Commerce Commission,**
**et al., Defendants.**

**Civ. A. No. 68-H-282.**

United States District Court
S. D. Texas,
Houston Division.

Sept. 17, 1968.

Ames, Hill & Ames, Harry C. Ames, Jr., and E. Stephen Heisley, Washington, D. C., Ewell H. Muse, Jr., Austin, Tex., Dyche, Wheat, Thornton & Wright, James T. Wright, Houston, Tex., for plaintiffs.

Steven Kazan, Atty., Interstate Commerce Commission, Washington, D. C., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Morton L. Susman, U. S. Atty., Houston, Tex., for defendants United States and Interstate Commerce Commission.

James, Robinson, Felts & Starnes, Thomas E. James and Phillip Robinson, Austin, Tex., Watkins, Ryan & Hamilton, A. J. Watkins, Houston, Tex., for intervening defendants.

Before GOLDBERG, Circuit Judge, and INGRAHAM and SINGLETON, District Judges.

INGRAHAM, District Judge:

This is a suit brought against the United States of America and the Interstate Commerce Commission under the provisions of 28 U.S.C. Secs. 1336, 2321–2325, 2284, 49 U.S.C. Sec. 17, and 5 U.S.C. Sec. 706, to set aside and annul a report and order of the I.C.C. and to enjoin it from issuing certificates of public convenience and necessity to intervening defendants, Ryder Truck Lines, Inc., The Mason and Dixon Tank Lines, Inc., Earl Gibbon Transport, Inc., Southern Tank Lines, Inc., and Robertson Tank Lines, Inc. The suit was filed by Younger Brothers, Inc. and permission was granted to Hearin-Miller Transporters, Inc.* to intervene on the side of plaintiff, Younger Brothers, Inc. The case was heard by a statutory three-judge court under the provisions of 28 U.S.C. Sec. 2325 on September 3, 1968.

I.

Plaintiff Younger Brothers is a common carrier by motor vehicle which, since 1964 has held authority to transport certain liquid chemicals from within a five-mile radius of Geismar, Louisiana, to points in twelve specific states. Younger and intervening plaintiff Hearin-Miller, which also holds that authority, applied in 1966 for authority to extend their authority in order to transport chemicals from within a fifteen-mile radius of Geismar (except Baton Rouge and Plaquemine, Louisiana) to points in the 48 contiguous states. Subsequently in 1966, five other carriers (the intervening defendant carriers Mason and Dixon, Gibbon, Robertson, Ryder and Southern) filed applications seeking substantially the same authority sought by plaintiffs. Plaintiffs protested the ap-

plications of the five carriers, based on their existing authority. The applications of plaintiffs were protested by Mason and Dixon, Ryder, Robertson and Gibbon. The protest of Mason and Dixon was based on its then existing authority to transport all of the involved commodities from the origin area of Geismar and points within fifteen miles thereof to points in twenty-one states and the District of Columbia. The protests of Robertson and Ryder were based upon their authority to transport dry bulk chemicals from Geismar and fifteen miles to Houston and fifty miles thereof. Ryder's protest was also based on its authority to transport from Geismar and fifteen miles to points in eleven states and the District of Columbia. Gibbon's protest was predicated on various chemical and petrochemical authorities which it held.

On August 18, 1967, the Hearing Examiner granted the authority sought to all applicants. Plaintiffs filed exceptions to the Examiner's order, but on December 7, 1967, the Commission affirmed the Examiner's decision and order with minor modifications. Plaintiffs' Petition for Reconsideration was denied by the Commission on March 4, 1968.

The complaint in this court was filed on March 26, 1968. On that date the court issued a temporary restraining order against the Commission to restrain its issuing certificates of public convenience and necessity to the five defendants. The Commission thereafter issued its order withholding the issuance of certificates to all applicants until otherwise directed by the court.

II.

Plaintiffs allege that the decision of the Commission is erroneous and should be set aside for five reasons:

1. That the Commission erred in granting five new services for the transportation of chemicals from with-

---

* After service of the examiner's report, Matlack, Inc. purchased Hearin-Miller's authority to originate traffic in Texas and Louisiana, and Matlack (one of the applicants for authority before the Com-

mission) was substituted for Hearin-Miller. Hearin-Miller was renamed Miller Transporters, and it together with Matlack are intervenors on the side of Younger.

in a five-mile radius of Geismar to the twelve-state area in view of a lack of evidence that the existing services are inadequate, and without making the necessary findings to support the grant of the five additional services.

2. That the Commission erred in finding that the evidence showed a need for more than two carriers in the twelve-state area served by plaintiffs, as well as to points beyond that twelve-state area.

3. That the Commission erred in failing to consider the established Commission criteria for choosing between multiple applicants. Plaintiffs allege that the criteria would show them to be the logical choices to receive the authority.

4. That the Commission erred in failing to restrict the authority granted to Gibbon and Southern to the traffic of Allied Chemical, their only supporting shipper.

5. That the Commission erred in granting the five additional services from Geismar and fifteen miles when the evidence shows that none of the supporting shippers supported any of the five applications from any point beyond a five-mile radius of Geismar.

### III.

1. Plaintiffs' first contention, that their existing service from Geismar and five miles has not been shown to be inadequate, is based on a line of cases which hold that a showing of inadequate service is a basic ingredient to the granting of additional authority to a specific area. See, e. g., Watkins Motor Lines, Inc. v. United States, 243 F.Supp. 436 (D.Neb.1965); Hudson Transit Lines, Inc. v. United States, 82 F.Supp. 153 (S.D.N.Y.1948), aff'd per curiam, 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485 (1949); Inland Motor Freight v. United States, 60 F.Supp. 520 (E.D.Wash.1945). Plaintiffs assert that the record clearly shows that not only has their service been adequate, they have been capable of transporting several times the number of loads they have been called upon to carry in the past.

Plaintiffs point out that the applications of the five applicants in effect involve two separate requests for authority:

(a) That stated in the application, i. e., from Geismar and points within fifteen miles thereof to points in the continental United States, and (b) That already held by plaintiffs, i. e., from Geismar and points within five miles thereof to points in plaintiffs' twelve-state area.

Reiterating that they feel no showing of inadequate service was made, plaintiffs maintain that the question is resolved into a question of law: Must there be adequate evidence of public convenience and necessity for additional service from Geismar and five miles to the twelve-state area to support the authority granted to the defendants? Plaintiffs are correct in stating that a similar question was decided in the affirmative by the Southern District of Texas in T.S.C. Motor Freight Lines, Inc. v. United States, 186 F.Supp. 777 (S.D.Tex.1960) (Judges Brown, Connally and Ingraham), aff'd per curiam, 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961). However, their assertion that this case presents the exact question presented in T.S.C. is erroneous.

In T.S.C., protestants Central and East Texas held authority to operate between Houston and Beaumont-Orange. The Commission granted Strickland and Southern-Plaza authority to operate between Houston and New Orleans, which included a Houston to Beaumont-Orange authority. The court held that there was simply no evidence of inadequate service to support the additional authority. The court therefore set aside that part of the Commission's decision granting the additional Houston to Beaumont-Orange authority.

However, T.S.C. does not hold that "adequate evidence of public convenience and necessity" is synonymous with "evidence of inadequate service" as

plaintiffs ostensibly assert. It has been repeatedly held that inadequate service is only *one element* to consider in determining public convenience and necessity. See, e. g., Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646, 653 (D.N.H.1964), and cases there cited; Lang Transp. Corp. v. United States, 75 F.Supp. 915 (S.D.Cal.1948).

■ In Younger Brothers, Inc. v. United States, 238 F.Supp. 859, 861 (S.D. Tex.1965) (Judges Brown, Hannay and Noel), Judge Brown (who wrote the opinion in T.S.C.) said, "Unlike TSC * * * in which as to one leg we held there was simply no evidence of public convenience and necessity, there was here abundant proof of (a) substantial present and future need and (b) inadequacy of existing service." This statement indicates that just as inadequate service is one element to consider in determining public convenience and necessity, future need is another important element. In other words, had there been a showing of future need in T.S.C., the court might have found adequate evidence of public convenience and necessity.

With regard to future need, the examiner's preliminary conclusions made reference to the immensity of the manufacturing projects proposed in the Geismar area within the immediate future. The examiner stated that:

"(4) Under existing operating authority, Younger transported only 34 tank truck shipments from the Geismar area in six months; and Hearin-Miller only 86 such shipments in the entire year 1966.

"(5) For reasons set out at length in the report, rapidly changing conditions in the Geismar area make it clear that Conclusion (4) now has little or no meaning in determining the present or future need for tank truck service there." R. 47.

It is therefore clear that this is a future need case, rather than a "present inadequate service" case as plaintiffs assert. But plaintiffs apparently claim that even if this is a future need case the examiner failed to find that they could not fulfill the shippers' future needs to the twelve-state area.

■ Although the examiner did not specify the twelve-state area in his conclusions as to future need, the court believes that the examiner's decision that additional service to all points in the United States would be needed in the future necessarily includes a finding that additional service would be needed to the twelve-state area. The examiner spoke in general terms of wide-spread need for additional service; by deduction, the twelve-state area will also need that additional service.

2. Plaintiffs secondly contend there is no evidence to support the examiner's finding that plaintiffs alone could not serve the future needs of the Geismar shippers to points beyond the twelve-state area.

As to this assertion, Judge Brown has said that, "the expertise for divination of future needs (is) committed exclusively to (the Commission)." Younger Brothers, Inc. v. United States, supra, at 860–861. The examiner specifically found that there was a need for several carriers to serve the shippers to points in the United States. The question thus arises whether this court should set aside that finding. In Texas Mexican Railway v. United States, 250 F.Supp. 946 (S.D.Tex. 1966), Judge Garza (joined by Judges Thornberry and Noel) said that even though the court might make a different decision if the matter had been de novo, the court could not set the Commission's order aside. To the same effect is Judge Ingraham's statement (joined by Judges Hutcheson and Connally) in Frozen Food Express v. United States, 136 F.Supp. 617, 620 (S.D.Tex.1955): "The Commission acted within the scope of its authority, and its order may not be set aside, modified or disturbed by a court of review even though the court may not agree with the decision or may consider that the evidence would warrant a different conclusion."

We hold that the record as a whole, including the statements of supporting shippers, the facts as to the enormous capital expenditures in the area, and the plans for expanded markets, warrants the examiner's finding of future need.

3. Plaintiffs' third contention is that the Commission erred in failing to consider the established criteria for choosing between multiple applicants, and that had these criteria been used, plaintiffs would have been the logical choices to receive the authority. Defendants answer simply that since the examiner found a future need for *all* the applicants, there was no choice to be made.

The defendants' assertion is well founded in the record. The examiner specifically found that:

"In this situation, the examiner can find no basis in reason or logic to conclude that as many as the eight (now seven) applicants should not be granted certificates. Certainly a public demand so great as to require six carriers could easily use two more; and further, if it could be ascertained that at least two of the pending applications should be denied, then the examiner would be at a loss as to how to select the two victims from among the eight well qualified applicants here before the Commission." R. 50–51.

4. Plaintiffs assert that since only one shipper, Allied, supported the applications of Southern and Gibbon, these carriers' authority should be limited to Allied's traffic. Referring again to Younger Brothers, Inc. v. United States, supra, 238 F.Supp. at 861, Judge Brown said that, "The Commission, both for conceptual and practical reasons, adheres to the course of imposing plant site restriction on common carrier certificates only in the rare and exceptional case in which clear and convincing evidence demonstrates that such a limitation is required in the public interest."

Plaintiffs overemphasize the impact of shipper support on the examiner's findings. The record as a whole reflects no "clear and convincing evidence" to support such a plant site restriction.

5. Plaintiffs lastly contend that since none of the shippers supported any of the five applicants from any point beyond a five-mile radius of Geismar, the Commission's grant of a fifteen mile radius authority is erroneous.

We believe that the record reflects proposed expansion in the Geismar area to be of such magnitude as to easily support the examiner's finding that a fifteen-mile radius is warranted. The examiner heard the testimony of a representative of the Baton Rouge Chamber of Commerce, and found:

"The Chamber's representative had had occasion to determine the number of announcements of chemical plant installations within the 15 mile radius of Geismar during the period covered by the exhibit. (Ex. 27) The majority of the announcements have been concentrated in the Geismar area. During the 1959–1966 period there were announcements of about 35 such chemical plant installations within the 15 mile area of Geismar representing a total investment of about 732 million dollars." R. 38.

Plaintiffs overemphasize the fact that seven of the eight supporting shippers are located within five miles of Geismar. The record substantiates the examiner's finding that probable expansion will soon extend into the larger area. The examiner was rightly concerned with making provisions for future years, rather than concentrating on the present and facing a similar situation as this case presents in a few years.

IV.

We find that the Commission acted within the scope of its authority, without abuse of its discretion, and that its action is supported by substantial evidence.

Plaintiffs' complaint will be dismissed. The clerk will notify counsel to draft and submit appropriate dismissal order.