DATA TRANSMISSION COMPANY, a corporation, Appellant,

v.

CORPORATION COMMISSION of Oklahoma and the State of Oklahoma, Appellees.

SOUTHWESTERN BELL TELEPHONE COMPANY, a corporation, Appellant,

v.

CORPORATION COMMISSION of Oklahoma et al., Appellees.

Nos. 48029, 48045.

Supreme Court of Oklahoma.

Oct. 19, 1976.

As Corrected On Denial of Rehearing March 21, 1977.

John L. Arrington, Jr., J. Clarke Kendall II, Huffman, Arrington, Scheurich & Kihle, Tulsa, for appellant, Data Transmission Co.

Robert D. Allen, Nancy Batchelor, Oklahoma City, for appellant, Southwestern Bell Telephone Co.

Rizley, Prichard, Ford, Norman & Reed, Tulsa, for appellee, United Video, Inc.

Ralph G. Thompson, Cantrell, Douglass, Thompson & Wilson, Oklahoma City, Wayne L. Goodrum, Preston, Holt, Goodrum & Harper, San Angelo, Tex., for amicus curiae General Telephone Co. of the Southwest.

DOOLIN, Justice.

This is an appeal by Southwestern Bell Telephone Company (Bell), from an order of the Corporation Commission (Commission), granting a certificate of convenience and necessity to United Video, Inc. (Video), "to operate a tele-communications system to provide intrastate microwave transmission of two-way audio-video, data, voice, facsimile, control and similar forms of telecommunications within and between the corporate limits of Tulsa and Oklahoma City."

The use of microwave as a common carrier transmission system was adopted shortly after World War II. Since that time its use for long haul communications has steadily increased. The characteristics of microwaves permit a very low unit cost operation, partly because it is capable of expanding its channel capacity up to many thousand voice-frequency channels.[1]

In 1969 the Federal Communications Commission (FCC) decided low cost two-way private line services utilizing microwave transmissions were in the public interest and should be encouraged. It therefore authorized Microwave Communications, Inc., to construct a communications common carrier route between St. Louis and Chicago. Pursuant to this initial grant a large number of microwave carriers, called "specialized common carriers" (SCC) by the FCC, made application to the FCC to provide these services in competition with the established carriers.[2] The private microwave system is designed to serve companies who desire communications from point A to point B on a consistent basis, and do not desire or need the type of service offered by a public switched message telephone network,[3] which is the ability to call anyone, anywhere at any time. This class of carrier with its special range of services simply augments the spectrum of telephone and telegraph carriers already in existence. The basic service concept of SCC is to provide flexible low-cost voice and data communication links between urban centers for lease by business and industrial users.

Video was organized in the late 1960's originally to provide microwave systems extending services of television stations to cities where otherwise they would not be received. After extensive study Video decided to expand its activities from the tele-

vision market into the specialized common carrier field, recognizing the demand for private line services is continually growing and a very large potential market is as yet undeveloped. In 1973 FCC granted Video authorization to construct two-way point-to-point microwave private line services on an interstate basis, including routes between Dallas and Oklahoma City and between St. Louis, Kansas City, Tulsa and Oklahoma City. At present the facilities are constructed and the service is being offered.

Video made this application to Commission for a certificate of convenience and necessity to authorize it to expand its interstate private telephone service to include intrastate service between Tulsa and Oklahoma City along already existing interstate routes. Video is not requesting authority to provide statewide service or to compete in any way with existing carriers for message toll service.[4]

Bell and other small local phone companies filed protests with Commission on the grounds the profit from Bell's private line service is used to subsidize the switched message service offered to the general public, and to grant Video's request would permit services in competition with, or duplication of, existing services, unauthorized under 17 O.S.1971 § 131 which provides:

(a) "It shall be unlawful for any person, firm, association, corporation or cooperative to construct, build or equip any public telephone, toll or long distance line or lines or any public telephone exchange or exchanges or commence operations of such toll or long distance line or exchange without having first obtained from the Corporation Commission of the State of Oklahoma a certificate that the present or future public convenience and necessi-

1. See S. Mathison, P. Walker. *Computers and Telecommunications,* Chap. 9, p. 175 et seq., (Prentice Hall, N.J. 1970).

2. See *Washington Utilities & Transportation Commission,* 513 F.2d 1142 (9th Cir. 1975) and cases therein cited.

3. "Switched message" or "switched network" refers to the ordinary dial telephone system.

4. Message toll service is the standard long distance service offered by established telephone companies.

ty require or will require the operation of such business or extension. This section shall not be construed to require any telephone company to secure such a certificate for any extension within or to any territory already served by it or for any extension into a territory contiguous to a territory already served by it on which it has heretofore filed with the Commission an exchange area map showing the territory professed to be served by such telephone company.

(b) The Commission shall not grant a certificate for a *proposed* plant, line or system, or extension thereof, which will be in competition with or duplication of any other plant, line or system, *unless it shall first determine that the existing facilities are inadequate to meet the reasonable needs of the public, or that the person operating the same is unable to or refuses or neglects, after hearing, on reasonable notice, to provide reasonably adequate service.* (Emphasis supplied).

(c) . . ."

Data Transmission Company intervened to establish its jurisdictional status as a SCC. It intends to offer only microwave service for data transmission by digital (non-voice) signals.

Commission heard extensive testimony as to microwave operation and the proposed tariffs. After due consideration it issued the order here appealed, finding the following capsulized facts among others:

1. The services of SCC includes both private line phone service and the transmission of data and signals.

2. There would be no significant amount of additional equipment necessary to provide service desired by Video on an intrastate basis since lines already exist.

3. Evidence failed to show that Bell is unable or unwilling to provide service of this type. Thus the service offered by Video would be in direct competition with Bell between Tulsa and Oklahoma City.

4. Video and other SCCs are "transmission companies" within the meaning of Article 9 § 18 Oklahoma Constitution and as such are subject to regulation by Commission.

5. 17 O.S.1971 § 131(a) governs, thus a certificate of convenience and necessity is required.

6. Because the FCC has authorized service and permitted competition in this type service on an interstate basis § 131(b) is not applicable.

7. Controlling issue is not whether Bell is capable of providing the service offered but whether existing and future demand for the service is such that each authorized carrier can capture a share of the traffic sufficient to enable it to provide adequate service to the public at a reasonable profit to itself.

8. In this situation the existence of competition makes for better service. It is only when the total demand in insufficient to support all authorized carriers that ruinous competition follows.

9. Presently there is a demand for the type of services here requested and the demand is expected to grow in the future. Such demand is sufficient to enable Bell and Video to provide the service without loss or injury to either.

10. The financial impact on small users will be minimal. Further, a cost saving service such as microwave cannot be withheld solely because it will impose a greater burden on other users.

11. All parties have disclaimed any intention to engage in price competition. Thus the lower tariffs submitted by Video should be disapproved.

12. Bell may provide the local loops[5] for Video at rates comparable to those offered general public.

---

5. A local loop is a voice grade facility which comprises a communications path between two points. It is made up of wire pairs that Bell has already installed for local telephone serv-

The order granted Video the certificate and found that Video and other SCCs are transmission companies and subject to regulation by Commission in connection with communications service offered to the public. Oklahoma Constitution, Art. 9 §§ 18, 34.

In case No. 48,045 Bell appeals the granting of the certificate to Video. In case No. 48,029, Datran appeals those portions of the order holding Commission has authority to regulate SCC. In reality Datran is appealing Commission's authority over it. The two appeals will be considered together.

■ In the Bell appeal (No. 48,045) Bell argues 17 O.S.1971 § 131(b), as amended in 1959, limits the power of the Commission to authorize a competing company to operate a telephone line duplicating services unless it is first shown the existing facilities are inadequate to meet the needs of the public or the existing carrier refuses to provide adequate service. Bell submits the certificate should have been refused because the Commission found Bell was ready and able to supply the same type of service, and Video offers no services that Bell technically could not supply. In other words, Bell feels because it is a permitted monopoly in the area of public switched message service it should be allowed to have the same status in the area of microwave private telephone services. With this we cannot agree.

In this country we have exceptional telephone service because we have granted controlled monopolies to telephone companies, and in return the right to regulate these controlled monopolies is retained by the state. But the Legislature has further provided that such monopolies must yield to public necessity and convenience. *Blakeley v. Corporation Commission,* 332 P.2d 1103 (Okl.1958).

■ The theory, recognized by Commission in its order, behind permitting and regulating monopolies is that a regulated monopoly provides more efficient utilization of communications resources, at lowest cost, without duplication and waste of carrier facilities associated with unregulated competition. Specialized common carriers however, will not replace or exclude traditional communications carriers but will coexist dependent on the needs of the customer.

■ In utility law it is axiomatic that utilities should be given the privilege of providing service on a monopolistic basis subject to regulation by Commission, when and if competition between utilities selling a like commodity results in wasteful and costly duplication of facilities, the cost of which will eventually be borne by the public served.[6] But the primary intent of the Legislature in authorizing Commission to withhold a certificate to a competitive carrier is not to establish or protect a monopoly but first and foremost to serve the best interests of the public.[7] Video acknowledges it is equivalent of a public telephone company and must obtain a certificate under § 131(a) in order to commence its intrastate operation. It asserts however the construction of § 131(b) urged by Bell would deny citizens of Oklahoma the use of a facility already in existence and in operation within the state on an interstate basis. Its position, supported by the Commission, is that the requirements of § 131(b) do not apply because the lines are not *proposed* but rather are already *in existence* by virtue of the interstate network encouraged and authorized by the FCC.

■■ Bell argues the authority granted by FCC for Video to build and operate a competing private telephone service on an interstate basis should not be conclusive upon a decision by Commission. While we agree the decision of FCC is not binding on

---

ice. These loops would be leased from Bell to provide telephone lines from Video's terminal office to customer's premises, thus interconnecting Video with its customers.

6. *Re Town of Wheatland—Wyoming Public Service Commission* 76 PUR3d 113 (1968).

7. *Re Pittsburgh—Philadelphia Transportation Co. Application No. 95,880,* _____ PUR3d _____ (Penn. Pub. Utilities Com. 1971).

this court, we would be injudicious to ignore the conclusions of the FCC, gained after extensive research and study. FCC found by permitting the entry of SCC, users would be provided with flexibility and a wider range of choices as to how they might best satisfy their expanding and changing requirements for specialized communication service. The FCC concluded competition in the microwave and private line services is good for the industry and its consumers.[8] Where the FCC establishes competition by a carrier in a new area is healthy and will best serve the public interest on a national level, Commission should not use a limited interpretation of a statute such as § 131(b) as the basis for summarily denying an entry of a carrier at the state level.

 Granted, the FCC and Commission have separate spheres of regulatory authority over the operations of the telephone industry. But where this authority is divided, the public interest demands the policies of the two jurisdictions be sufficiently consistent to prevent an impasse under which business cannot by conducted because of one jurisdiction thwarting the mandates of the other.[9] A uniform policy of interstate and intrastate authorization is certainly an important element of public convenience and necessity, consequently Commission was correct in considering the action taken by the FCC.

Future need as well as inadequate service is an important element to be considered by Commission in determining public convenience and necessity.[10] Also competitive stimulation certainly compels a monopoly to reassess its operation and may be a factor to be considered by Commission.[11] The possibility that a monopoly's business might lessen slightly is not controlling.[12] There is no public policy condemning competition as such in the field of public utilities. Public policy only condemns unfair or destructive competition.[13] In *United States v. Dixie Highway Express, Inc.,* 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639 (1967), the Supreme Court held a regulatory commission's power is not so circumscribed as to necessitate a refusal of a certificate if it is shown that existing carriers "might arrange to furnish successfully the projected service." One state court with a similar "existing facility" statute held, in permitting a certificate to operate a mobile radiotelephone, that such rule does not apply to transmission and reception by *radio waves* because even though such facilities are a duplication of service there is no resulting waste.[14]

Although Bell uses the standard argument that revenue from its private line business subsidizes the balance of its telephone service, and if some is lured away by Video rates to the general public might be affected, there was testimony at the hearing that the switched message services of the established carriers might be subsidizing the private line services rather than the reverse. Testimony at hearing also indicated the impact of Video's service on Bell's revenue will be minimal. The portion of message toll service affected is so small that it would be inconceivable there would be any adverse effect on the rates charged by Bell.

The fact Bell could make available similar services is not justification for denial of

8. *In re Establishment of Policies & Procedures for Consideration of Application to Provide Specialized Common Carrier Services* 36 Fed. Reg. 11144, 29 FCC 870 (1971).

9. *Malis v. General Telephone Company of California,* 40 PUR3d 315, 319 (Cal. Pub. Utilities Comm. 1961).

10. *Younger Brothers Inc. v. United States,* 289 F.Supp. 545 (S.D. Tex. 1968).

11. *Short Line Inc. v. United States,* 290 F.Supp. 939 (D.C. R.I. 1968); *Re Michigan Bell Tele-*

phone Co. 3 PUR4th (Mich. Pub. Serv. Comm. 1973).

12. *Holzbierlein v. State,* 197 Okl. 509, 172 P.2d 1007 (1946).

13. *State ex rel. Utilities Commission v. J. D. McCotter, Inc.,* 16 N.C.App. 475, 192 S.E.2d 629 (1972).

14. *Keith v. Palmer,* 84 PUR3d 45, 235 So.2d 454 (Miss. 1970).

Video's application. Bell is a permitted and regulated monopoly as to switched message service. All witnesses acknowledged there is an increasing demand for private line services and the demand will continue to increase. If this order is reversed, Bell would also in Oklahoma have a monopoly on future microwave private line communications and could become a natural monopoly in all means of electronic communications to be developed in the future. The reasons for § 131(b) and for allowing Bell to retain a monopoly in this field do not apply here.

Video claims it is the first such company to apply to a state regulatory commission for authorization to operate on an intrastate basis. Apparently however, the California Public Utilities Commission has since granted a similar request by a company wishing to operate an intrastate point-to-point microwave communication system. Its order now in effect and unappealed reveals the policy of California is to permit competition in this specialized field. The California Commission found a policy which would categorically forbid entry of specialized telephone carriers into the field would be contrary to the Commission's duty to protect public interest and would fail to consider actual and potential anti-competitive aspects of a developing market.[15]

▮ The purpose of Video's application is to provide private line services via a telecommunications network which is part of an existing FCC authorized interstate network. It does not propose to provide any service under the public switched message telephone service. Private line service does not require direct access to switching facilities and is not in any way in competition for that service. No additional burden will be placed on Video because adaptation of facilities for intrastate use requires only minor adaptations. Granting of this certificate will in no way injure Oklahoma users because the portion of revenue taken from existing carriers will be insignificant. To the contrary, such competition may occasion Bell to respond in an innovative manner to the requirements of the market place. The intent of § 131 is to protect the public from high cost duplication and waste. This test is met. The certificate was properly granted.

In appeal No. 48,029 Datran is protesting the portion of the order holding SCC are transmission companies and thus subject to regulation by Commission by virtue of Art. 9 § 18 of the Oklahoma Constitution. Datran is an SCC, at the present utilizing digital communication for transmission of data only and not involved in analog voice communication.[16]

The FCC authorized Datran as a SCC to build a digital data communications network serving customers in cities throughout the United States including Tulsa and Oklahoma City. For intracity transmission Datran leases local telephone transmission lines or loops from existing carriers. Because Datran is also prepared to offer its services on an intrastate basis, its sought to have its jurisdictional status determined by Commission. Datran submits because of its limited service it is not a "transmission company" and should not be required to obtain a certificate of convenience and necessity before it commences intrastate operation in Oklahoma.

Art. 9 § 34 of the Oklahoma Constitution provides: "[a] transmission company shall include any company, receiver or other person owning, leasing or operating for hire any telegraph or telephone line;" Datran claims because it is neither a telephone nor a telegraph company it is not a transmission company and thus not subject to regulation by Commission.

▮ We do not find this constitutional provision so limited. At the time of the

---

15. *Pacific Telephone and Telegraph Co. v. Southern Pacific Communications Co.* Decision # 84,167 (Cal. Public Utilities Commission March 4, 1975).

16. Datran differentiates digital and analog signals by equating an analog signal, of which human speech is an example, to the gradations in light intensity achievable by the turning of a rheostat connected to a light bulb. Conversely the digital signal is analogous to the turning on and off of a conventional light switch.

adoption of this provision of the Oklahoma Constitution, computers and microwave data transmission were not in existence. Under these circumstances we feel it would be unwise to infer that by specifically including only telephone and telegraph companies, the founders of our constitution meant to exclude forever regulation by the Commission of companies who would transmit through a neoteric medium. We therefore hold specialized common carriers, as defined by the FCC, are transmission companies within the meaning of the Oklahoma Constitution Art. 9 §§ 18, 34. Any further determination by this court as to Datran would be an impermissible expansion of the issues involved in Video's application. See *Vinson v. Washington Gas Light Company,* 321 U.S. 489, 64 S.Ct. 731, 88 L.Ed. 883 (1944).

ORDER AFFIRMED.

All the Justices concur, except HODGES, V. C. J., not participating.