SIERRA CLUB v. CORPORATION COMMISSION



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:SIERRA CLUB v. CORPORATION COMMISSION

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 SIERRA CLUB v. CORPORATION COMMISSION
2018 OK 31
Case Number: 115029; w/115030
Decided: 04/24/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 31, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE APPLICATION OF OKLAHOMA GAS AND ELECTRIC COMPANY FOR COMMISSION APPROVAL OF THE COMPANY'S PLAN TO INSTALL DRY SCRUBBERS AT THE SOONER GENERATING FACILITY:

SIERRA CLUB INC. and OKLAHOMA ENERGY RESULTS LLC., Appellants,
v.
THE CORPORATION COMMISSION OF THE STATE OF OKLAHOMA and OKLAHOMA GAS & ELECTRIC COMPANY, Appellees.

APPEAL FROM OKLAHOMA CORPORATION COMMISSION CAUSE
NO. PUD 201600059.

Bob Anthony, Chairman; Dana Murphy, Vice Chairman; and Todd Hiett,
Commissioner.

¶0 In 2014, Oklahoma Gas & Electric Company sought the Corporation Commission's approval for a capital expenditure to comply with certain environmental regulations. The Commission denied the application pursuant to 17 O.S. 2011 §286(B). Then in 2016, OG&E submitted a similar application, which the Commission granted pursuant to Okla. Const. art. 9, §18 and 17 O.S. 2011 §151 et seq. We retained jurisdiction to determine whether res judicata precluded the second application and whether the Commission lacked authority to grant approval outside of 17 O.S. 2011 §286(B). We hold that although res judicata did not preclude the second application, the Commission lacked authority to grant approval outside of §286(B).

ORDER OF THE OKLAHOMA CORPORATION COMMISSION VACATED.

Sanjay Narayan, Kristin Henry, Oakland, California.
Jon Laasch, Edmond, Oklahoma.
Cheryl A. Vaught, Scot A. Conner, David A. Elder, Matthew W. Brockman, Jacquelyn L. Dill, Oklahoma City, Oklahoma, for Appellants.

Robert G. McCampbell, Travis V. Jett, Kimber L. Shoop, Robert J. Campbell, Jr., Oklahoma City, Oklahoma, for Appellees.

KAUGER, J.:

¶1 This case involves an order of the Oklahoma Corporation Commission that granted Oklahoma Gas & Electric Company pre-approval to install pollution-control devices at one of its power plants. The order raises two issues: 1) whether res judicata precluded the Commission from pre-approving OG&E's capital expenditure; and 2) whether the Commission could grant pre-approval under Okla. Const. art. 9, §18[1] and 17 O.S. 2011 §151 et seq. rather than 17 O.S. 2011 §286(B).

¶2 We hold that although res judicata did not preclude the Commission from pre-approving the expenditure, it lacked authority outside of 17 O.S. 2011 §286(B)[2] to do so.

FACTS

¶3 Pursuant to the Clean Air Act and other federal statutes,[3] the United States Environmental Protection Agency set certain emission limits that affect coal and natural gas facilities operated by Oklahoma Gas & Electric Company ("OG&E"). These emission requirements must be met by January 4, 2019, and OG&E consequently prepared an environmental compliance plan.[4] The plan involved a rate base proposal to add 1.1 billion dollars for a number of construction projects at various OG&E facilities and included the installation of "dry scrubbers"[5] at the Sooner Power Plant.

¶4 On August 6, 2014, OG&E submitted an application to the Oklahoma Corporation Commission (the "Commission") seeking pre-approval of the environmental compliance plan and a recovery rider to recoup its expenditures through rate adjustments.[6] The Commission denied this application because OG&E failed to demonstrate that its plan would be fair, reasonable, and non-prejudicial to ratepayers.[7] The Commission noted that OG&E failed to consider alternative energy sources such as wind and electric power. It also took issue with the fact that future environmental regulations had been ignored. Concluding that OG&E failed to demonstrate the financial benefit of its plan over potential alternatives, the Commission denied authorization. OG&E moved to modify the order, requesting that the projects be approved without a recovery in rates until the reasonableness of the costs could be determined in a later proceeding. The Commission declined to modify its final order.

¶5 In the 2014 application, OG&E sought the Commission's authorization under 17 O.S. 2011 §286(B).[8] Section 286(b) provides that an electric utility may seek the Commission's approval to make capital expenditures on equipment that is necessary to comply with environmental regulations. If the Commission approves the plan, the purchased equipment is presumed used and useful and the utility may adjust its rates to recover the costs of the expenditure.

¶6 After OG&E's first application was denied, it filed a second application with the Commission on February 6, 2016.[9] The 2016 application involved only installation of the dry scrubbers with projected costs of roughly 490 million dollars. OG&E sought approval of the decision to install the scrubbers, but did not seek a determination on the reasonableness of cost recovery. It explicitly stated that any cost recovery would be addressed in a later proceeding.[10] The final order entered by the Commission, which is presently at issue, approved OG&E's decision to install the scrubbers. The Commission found that the decision "[was] -- no more or no less -- reasonable."[11]

¶7 Unlike the 2014 application, which sought approval under 17 O.S. 2011 §286(B), the 2016 application sought approval under Okla. Const. art. 9, §18[12] and 17 O.S. 2011 §§151 et seq.[13] The Oklahoma Constitution, art. 9, §18 grants the Commission general authority to supervise, regulate, and control transmission companies like OG&E. It further grants the Commission authority to promulgate and enforce rules, regulations, and requirements. Title 17 O.S. 2011 §152 similarly provides that the Commission "shall have general supervision over all public utilities, with power to fix and establish rates and to prescribe and promulgate rules, requirements and regulations." In its final order, the Commission concluded that while pre-approval under §286(B) raises issues about cost recovery, pre-approval under Okla. Const. art. 9, §18 and 17 O.S. 2011 §152 does not.[14]

¶8 Seeking review of the Commission's order pre-approving installation of the scrubbers, Oklahoma Energy Results, LLC., and Sierra Club, Inc. ("Appellants"), filed a Petitioner in Error. This Court retained jurisdiction and now vacates the Commission's order.[15]

 

STANDARD OF REVIEW

 

¶9 The Oklahoma Constitution, art. 9, §20 grants this Court the power to review decisions of the Commission.[16] It envisions two standards of review. When a "constitutional question is implicated," a de novo standard is applied.[17] In all other appeals, a more deferential standard is applied, and we "determin[e] whether the Commission adequately performed its duty under federal and state law and whether the Commission's findings are supported by substantial evidence."[18] Because the Commission granted pre-approval pursuant to Okla. Const. art. 9, §18, we review its decision de novo.

I.

Res Judicata Did Not Preclude The Commission From Pre-Approving 
OG&E's Capital Expenditure.

¶10 Both the 2014 and 2016 applications sought the Commission's approval to install the dry scrubbers. The Appellants have consequently argued that the second order was barred under the doctrines of claim and issue preclusion, or res judicata. We disagree.

¶11 The Commission may exercise legislative, judicial, or executive power.[19] When it exercises judicial power, the Commission is functionally a court of record, and judicial doctrines such as res judicata are applicable.[20] When it exercises legislative power, however, res judicata is not applicable.[21] Findings of fact or rules of law stated in a legislative proceeding have no preclusive effect.[22] For example, in Chicago, R.I. & P.R. Co. v. State, 1950 OK 297, ¶ 1 225 P.2d 363, the Commission issued a final order denying an application that sought to establish a grade crossing over a railroad track. A similar application was submitted three years later, which the Commission granted. The railway company argued that the first final order was a former adjudication of the same matter before the Commission and, therefore, preclusive. This Court rejected that argument, holding that "[t]he doctrine of res judicata is not recognized in proceedings of this character before the Corporation Commission."[23]

¶12 Whether res judicata is applicable in the present case thus turns on whether the Commission was exercising judicial or legislative power when it considered OG&E's applications.

 

¶13 A proceeding is "judicial" if it "investigates, declares, and enforces liabilities as they stand on present and past facts and under laws supposed already to exist."[24] In Monson v. State ex rel. Oklahoma Corp. Comm'n, 1983 OK 115, ¶¶ 2, 6, 673 P.2d 839, the Commission was exercising judicial power when it granted an application that allowed a drilling company to dispose of salt water by injecting it into a well located near the appellant-landowner's property. It was a judicial proceeding because the Commission heard evidence and decided an issue which resolved a dispute between private parties. Also, in Hair v. Oklahoma Corp. Comm'n, 1987 OK 50, ¶ 26, 740 P.2d 134, the Commission was exercising judicial power when it determined the effective date of a previous order that established drilling units for the production of natural gas.

¶14 A proceeding is legislative, conversely, if it "looks to the future and changes existing conditions by making a new rule to be applied thereafter."[25] A ratemaking hearing, for example, is always a legislative proceeding because it establishes a rule for the future.[26] Consider also Cox Oklahoma Telecom, LLC, v. State ex rel. Oklahoma Corp. Comm'n, 2007 OK 55, ¶ 2, 164 P.3d 150, where Southwestern Bell Telephone asked the Commission to reclassify certain retail communication services as "competitive." Such a reclassification would affect whether the prices for those services could be changed without Commission approval. This Court found the proceeding to be legislative in nature because rather than reconstructing past events, the Commission was establishing a rule to guide future decision-making. While this was "not a ratemaking proceeding per se," it was closely related to a ratemaking proceeding.[27] Approving the application allowed Southwestern Bell to determine certain rates in the future with only minimal oversight. This close relation to ratemaking was evidence of the proceeding's legislative character.

¶15 Here, the Commission was exercising legislative power, and therefore res judicata is not applicable. Rather than enforcing an obligation, it was considering a change to existing conditions. The act of approving or denying OG&E's applications was more akin to making a rule than imposing liability. The Commission was not investigating past events in order to resolve a private dispute between the parties, but was instead looking to the future and considering an order that would be applied prospectively. Additionally, OG&E initially sought approval under 17 O.S. 2011 §286(B), which would allow it to make rate adjustments and recover the costs of the expenditure. The 2014 application specifically included a cost recovery rider, which would have caused rates to increase. As in Cox Oklahoma Telecom, this was not a ratemaking proceeding per se, but its relation to a ratemaking proceeding does provide support for its legislative character.

¶16 Moreover, even if res judicata were applicable, it still would not have precluded the second application because different issues were addressed. Claim preclusion prevents parties (or their privies) from relitigating a claim that "either w[as] or could have been litigated in a prior action which resulted in a prior judgment on the merits."[28] Issue preclusion prevents parties (or their privies) from relitigating an issue of fact or law that was "necessary to" and "determined by a valid and final judgment."[29] It is applicable only when the party to be precluded had a "full and fair opportunity" to litigate the issue.[30]

¶17 The 2014 and 2016 applications addressed different issues. The 2014 application involved roughly 1.1 billion dollars for a number of construction projects at a number of different facilities. The 2016 application, on the other hand, involved roughly 490 million dollars for only the installation of the dry scrubbers at the Sooner facility. Because the 2014 application included a cost recovery rider, the Commission was considering the fairness of the project to ratepayers. The 2016 application, however, specifically disclaimed any cost recovery until a later proceeding and the Commission was considering only whether installation of the scrubbers was "reasonable." Finally, the 2014 application sought approval under the specific provision of 17 O.S. 2011 §286(B), while the 2016 application sought approval under the Commission's general authority to oversee utilities found in Okla. Const. art. 9, §18 and 17 O.S. 2011 §152.[31]

¶18 Because the proceedings before the Commission were legislative in nature, and because the applications raised different issues, res judicata is inapplicable.

 

II.

The Commission Lacked the Authority To Approve OG&E's Capital 
Expenditure Outside of 17 O.S. 2011 §286(B).

¶19 Utilities are given the privilege of providing services on an essentially monopolistic basis and are therefore subject to regulation by the Commission.[32] This regulatory authority was initially created and outlined in the Oklahoma Constitution[33] and its scope has been further defined by statute.[34] The resolution of the present issue involves the interplay between the broad grant of constitutional authority and a specific statute that governs pre-approval of capital expenditures.

A. The Applicable Constitutional and Statutory Authority

¶20 In the 2014 application, OG&E sought approval of the environmental compliance plan under 17 O.S. 2011 §286(B). It provides, in pertinent part:

An electric utility subject to rate regulation by the Corporation Commission may file an application seeking Commission authorization of a plan by the utility to make capital expenditures for equipment or facilities necessary to comply with the federal Clean Air Act . . . .[35]

Section 286(B) was enacted in 2005 and currently exists as amended in 2008. It allows electric utilities, like OG&E, to seek pre-approval of capital expenditures to comply with environmental regulations.[36] Prior to the enactment of §286(B), a utility would construct or purchase the necessary equipment and then seek approval after the fact in a rate case.[37] Section 286(B) allows a utility to seek pre-approval, thus avoiding the risk of a large capital expenditure prior to initiating a cost recovery proceeding.

 

¶21 In the 2016 application, conversely, OG&E sought approval of the scrubbers under Okla. Const. art. 9, §18 and 17 O.S. 2011 §151 et seq. The Oklahoma Constitution, art. 9, §18 provides in pertinent part:

The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State . . . and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations . . . . The authority of the Commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges, and classifications of traffic, for transportation and transmission companies, shall, subject to regulation by law, be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the Legislature to legislate thereon by general laws.[38]

Section 18 grants the Commission broad authority to supervise, regulate, and control public utilities. Specifically, the Commission can establish rates, charges, rules, and regulations. Section 18 then clarifies that while the Commission's authority to establish rates and charges is paramount, its authority to establish any other rule or regulation is subject to the legislature's superior authority as prescribed by statute.

 

¶22 Title 17 O.S. 2011 §151 et seq. similarly involves a broad grant of authority. Section 151 defines "public utility," and the subsequent sections then outline the Commission's jurisdiction and authority over public utilities. Section 152(A) provides:

The Commission shall have general supervision over all public utilities, with power to fix and establish rates and to prescribe and promulgate rules, requirements and regulations, affecting their services, operation, and the management and conduct of their business; shall inquire into the management of the business thereof, and the method in which same is conducted.

Section 152 was enacted in 1913 and currently exists as amended in 1994. It broadly grants the Commission supervisory authority over public utilities and grants it the power to establish rates, rules, requirements, and regulations. The Commission's power to regulate under §152 "is not unfettered," but is instead limited by the Constitution and must be exercised within the confines of other statutes.[39] When interpreting §152, this Court will find that the Commission has "only those additional duties that would be consistent with and within the purview of its constitutional authority."[40]

¶23 Appellants have argued that the Commission exceeded its power when it granted OG&E pre-approval to install the scrubbers based on its "general authority."[41] We agree.

 

B. Title 17 O.S. 2011 §286(B) Provides The Only Authority For Pre-Approval
Of Capital Expenditures To Comply With Environmental Regulation.

¶24 The legislature created a specific procedure by which a utility can seek pre-approval of a capital expenditure to comply with environmental regulation: 17 O.S. 2011 §286(B). Unsurprisingly, when OG&E first sought pre-approval for a capital expenditure to comply the Clean Air Act, it did so pursuant to §286(B). It was not until this application was denied that an alternative source was considered.

¶25 As a general rule, the Commission lacks authority to grant pre-approval of an expenditure. Prior to the enactment of §286(B) in 2005, this Court held so repeatedly. It made clear that the Commission's authority "does not include the power to approve or disapprove contracts about to be entered into nor to approve or veto the expenditures proposed."[42] It reiterated that the Commission's "powers are not to be exercised except for the purpose of determining the fair and reasonable effect of acts already performed."[43]

¶26 The Commission has general authority to address the fairness of a completed project, not a future one. For example, in Public Service Company of Oklahoma v. Oklahoma Corporation Commission, 1983 OK 124, ¶ 1, 688 P.2d 1274, Public Service Company of Oklahoma (PSO) applied to the Commission for a rate increase. One issue on appeal was whether a power-generating facility that was under construction but not yet completed could be included in the rate base. The Commission said it would not include that facility in the rate base unless it had approved the construction plans. This Court held that "the Commission has no power to demand prior approval of construction plans for a new plant, but once it is built, the Commission is empowered to ascertain its effect upon the public rates."[44] This case is, of course, distinguishable from the present one in that OG&E is now seeking prior approval rather than the Commission demanding it. Nevertheless, just because OG&E has asked does not mean that the Commission can give. Again, it cannot "approve or veto the expenditures proposed."[45]

¶27 The legislature, however, has created a limited exception to this general rule. It explicitly allows utilities to seek pre-approval under §286(B). And two principles of statutory construction support the proposition that the Commission does not have the authority to grant pre-approval outside of §286(B). First, a statute cannot be interpreted as superfluous.[46] If the Commission has the ability to grant pre-approval outside of §286(B), then it had the ability to grant pre-approval prior to the enactment of §286(B). If the Commission had the ability to grant pre-approval prior to the enactment of §286(B), then §286(B) was not needed to confer the power to pre-approve. Statutes, though, must be construed so as to not render them superfluous.[47] Thus, the Commission does not have the ability to grant pre-approval outside of §286(B).

 

¶28 The second relevant principle of statutory construction is that where two statutes address the same subject, one specific and one general, the specific statute will control over the general.[48] Title 17 O.S. 2011 §152 broadly grants the Commission supervisory authority over public utilities and grants it the power to establish rates, rules, requirements, and regulations.[49] Specifically, 17 O.S. 2011 §286(B) addresses how the Commission exercises that supervisory authority in the context of pre-approval. Section 286(B), the specific statute, thus controls how the Commission can grant pre-approval.

¶29 Finally, the Commission's decision to grant pre-approval in a way completely untethered from the project's effect on ratepayers further calls its order into question. The powers of the Commission over utilities "are limited to an investigation of the[ir] acts to determine whether or not they have a reasonable and fair effect upon the rights of the public," and it must act to avoid an "unfair or prejudicial effect upon the public rights."[50] In proceedings before the Commission, the interests of the public "must be considered."[51]

¶30 In the first proceeding under §286(B), the Commission did so. In the second proceeding, however, the Commission determined only that the installation of the scrubbers would be "reasonable." Any fairness to ratepayers (or lack thereof) was to be addressed at a later cost recovery proceeding. OG&E consequently received pre-approval for a project costing approximately half a billion dollars without its effect on ratepayers being considered. More pointedly, when a similar project was considered in the first proceeding, the Commission found that it would not be fair to ratepayers.[52] The legislature saw fit in §286(B) to link pre-approval with the project's fairness to ratepayers. Neither OG&E nor the Commission has provided any cogent argument demonstrating that pre-approval can be detached from fairness.

 

CONCLUSION

¶31 This decision does not leave OG&E without recourse. To the extent that it wants to continue with installation of the scrubbers, it can initiate a standard ratemaking proceeding under 17 O.S. 2011 §152 after the fact. Pre-approval, however, of capital expenditures to comply with environmental regulation must occur pursuant to 17 O.S. 2011 §286(B). Because the Commission granted pre-approval for such an expenditure outside of §286(B), it erred. Although res judicata did not preclude the Commission from pre-approving the expenditure, it lacked the authority to do so. Consequently, its order is vacated.

ORDER OF THE OKLAHOMA CORPORATION COMMISSION
VACATED

COMBS, C.J., KAUGER, EDMONDSON, COLBERT, REIF, JJ., concur.

GURICH, V.C.J., concurs in result.

WINCHESTER, J., dissents (by separate writing).

WYRICK, J., recused.

DARBY, J., not voting.

FOOTNOTES

[1] Okla. Const. art. 9, §18 provides in pertinent part:

The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission may, from time to time, alter or amend. All rates, charges, classifications, rules and regulations adopted, or acted upon, by any such company, inconsistent with those prescribed by the commission, within the scope of its authority, shall be unlawful and void.

*****

The authority of the Commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges, and classifications of traffic, for transportation and transmission companies, shall, subject to regulation by law, be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the Legislature to legislate thereon by general laws: Provided, However, That nothing in this section shall impair the rights which have heretofore been, or may hereafter be, conferred by law upon the authorities of any city, town or county to prescribe rules, regulations, or rates of charges to be observed by any public service corporation in connection with any services performed by it under a municipal or county franchise granted by such city, town, or county, so far as such services may be wholly within the limits of the city, town, or county granting the franchise. Upon the request of the parties interested, it shall be the duty of the Commission, as far as possible, to effect, by mediation, the adjustment of claims, and the settlement of controversies, between transportation or transmission companies and their patrons or employees.

[2] Title 17 O.S. 2011 §286(B) provides:

An electric utility subject to rate regulation by the Corporation Commission may file an application seeking Commission authorization of a plan by the utility to make capital expenditures for equipment or facilities necessary to comply with the federal Clean Air Act (CAA), the Clean Water Act (CWA), the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), the Emergency Planning & Community Right-to-Know Act (EPCRA), the Endangered Species Act (ESA), the National Environmental Policy Act (NEPA), the Occupational Safety and Health Act (OSHA), the Oil Pollution Act (OPA), the Pollution Prevention Act (PPA), the Resource Conservation and Recovery Act (RCRA), the Safe Drinking Water Act (SDWA), the Toxic Substances Control Act (TSCA), all as amended, and, as the Commission may deem appropriate, federal, state, local or tribal environmental requirements which apply to generation facilities. If approved by the Commission, after notice and hearing, the equipment or facilities specified in the approved utility plan are conclusively presumed used and useful. The utility may elect to periodically adjust its rates to recover the costs of the expenditures. The utility shall file a request for a review of its rates pursuant to Section 152 of this title no more than twenty-four (24) months after the utility begins recovering the costs through a periodic rate adjustment mechanism and no more than twenty-four (24) months after the utility begins recovering the costs through any subsequent periodic rate adjustment mechanism. Provided further, that a periodic rate adjustment or adjustments are not intended to prevent a utility from seeking cost recovery of capital expenditures as otherwise may be authorized by the Commission. However, the reasonableness of the costs to be recovered by the utility shall be subject to Commission review and approval. The Commission shall promulgate rules to implement the provisions of this subsection, such rules to be transmitted to the Legislature on or before April 1, 2007.

[3] 42 U.S.C. §§7491-92; 76 Fed. Reg. 81,727.

[4] OG&E and the Oklahoma Attorney General initially fought implementation in federal court. Oklahoma v. U.S. E.P.A., 723 F.3d 1201 (10th Cir. 2013). The challenges ended when the United States Supreme Court denied a writ of certiorari. Oklahoma v. U.S. E.P.A., 134 S. Ct. 2662 (2014).

[5] Sierra Club v. Costle, 657 F.2d 298, 324--25 (D.C. Cir. 1981), describes a dry scrubber as an air pollution-control device that:

removes sulfur dioxide in two stages which incorporate the use of a spray dryer and a baghouse. In this system a spray dryer (similar to a wet scrubber) is used with lime, soda ash, or other reagents to scrub sulfur dioxide from flue gases. Unlike wet scrubbing systems, since the flue gas leaving the spray dryer is "hot" (150-180o F) due to the minimal use of water in the spray dryer (by design), no additional reheating of the exhaust plume is required. Following the spray dryer, a baghouse is used to collect all particulate matter (including sulfur dioxide reactants).

[6] Cause No. PUD 201400229.

[7] Order No. 286 (Dec. 2, 2015).

[8] Title 17 O.S. 2011 §286(B), see note 2, supra.

[9] Cause No. PUD 201600059.

[10] Application No. 139.

[11] Cause No. PUD 201600059, Order No. 652208.

[12] Okla. Const. art. 9, §18, see note 1, supra.

[13] Chapter 8 -- Water, Heat, Light, and Power Companies.

[14] Cause No. PUD 201400229, Order 652208.

[15] On 12-22-2016, the Appellants moved for oral argument. This motion is denied.

[16] Okla. Const. art. 9, §20 provides in pertinent part:

The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States of the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence. Upon review, the Supreme Court shall enter judgment, either affirming or reversing the order of the Commission appealed from.

[17] Cox Oklahoma Telecom, LLC, v. State ex rel. Oklahoma Corp. Comm'n, 2007 OK 55, ¶ 9, n.17, 164 P.3d 150 ("We review de novo the Commission's decision to treat this proceeding as legislative rather than judicial because a constitutional question is implicated.").

[18] Okla. Const. art. 9, §20, see note 15, supra; Cox Oklahoma Telecom, LLC, 2007 OK 55, ¶ 9, n.16.

[19] Monson v. State ex rel. Oklahoma Corp. Comm'n, 1983 OK 115, ¶ 4, 673 P.2d 839; Cont'l Tel. Co. of Oklahoma, Inc. v. Hunter, 1979 OK 14, ¶ 5, 590 P.2d 667.

[20] Monson, 1983 OK 115, ¶ 4.

[21] Chicago, R.I. & P.R. Co. v. State, 1950 OK 297, ¶ 21, 225 P.2d 363; Cmty. Nat. Gas Co. v. Corp. Comm'n of Okla., 1938 OK 51, ¶ 15, 76 P.2d 393.

[22] Cmty. Nat. Gas Co., 1938 OK 51, ¶ 15, 76 P.2d 393.

[23] Chicago, R.I. & P.R. Co. v. 1950 OK 297, ¶ 21.

[24] Prentis v. Atlantic Coast Line Company, 211 U.S. 210, 226 (1908). This Court has adopted the United States Supreme Court's definition of "legislative" and "judicial" proceedings. Cox Oklahoma Telecom, LLC, 2007 OK 55, ¶ 11; Southwestern Bell Telephone Co. v. Okla. Corp. Comm'n, 1994 OK 38, ¶ 9, 873 P.2d 1001.

[25] Prentis, 211 U.S. at 226; Cox Oklahoma Telecom, LLC, 2007 OK 55, ¶ 11.

[26] Wiley v. Okla. Natural Gas Co., 1967 OK 152, ¶ 3, 429 P.2d 957; Turpen v. Okla. Corp. Comm'n, 1988 OK 126, ¶ 76, 769 P.2d 1309.

[27] Cox Oklahoma Telecom, LLC, 2007 OK 55, ¶ 15.

[28] State ex rel. Tal v. City of Oklahoma City, 2002 OK 97, ¶ 20, 61 P.3d 234; Deloney v. Downey, 1997 OK 102, ¶ 17, 944 P.2d 312.

[29] Carris v. John R. Thomas & Associates, P.C., 1995 OK 33, ¶ 10, 896 P.2d 522; Salazar v. City of Oklahoma City, 1999 OK 20, ¶ 10, 976 P.2d 1056.

[30] Salazar, 1999 OK 20, ¶ 10.

[31] The two proceedings presented different issues. Indeed, Appellants have alleged error because of these differences. They have argued that the Commission's final order from the second proceeding should be vacated because it failed to consider whether the project was fair to ratepayers and instead considered only whether the project was "reasonable" in the abstract. Determining whether a project is "reasonable" is different than determining whether later recovery would be fair to ratepayers, which is what occurred in the first proceeding. Similarly, Appellants have argued that the order should be vacated because the Commission granted approval under its general constitutional authority rather than under §286(B), which was the applicable standard in the first proceeding.

[32] Data Transmission Co. v. Corp. Comm'n, 1976 OK 148, ¶ 14, 561 P.2d 50.

[33] Okla. Const. art. 9, §§15--35.

[34] Title 17: Corporation Commission.

[35] 17 O.S. 2011 §286(B), see note 2, supra.

[36] Okla. Admin. Code 165:35-38-4.

[37] Cause no. PUD 201400229, Order No. 647346.

[38] Okla. Const. art. 9, §18, see note 1, supra.

[39] Pub. Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n ex rel. Loving, 1996 OK 43, ¶ 21, 918 P.2d 733.

[40] Oklahoma Gas & Elec. Co. v. Corp. Comm'n, 1975 OK 15, ¶ 28, 543 P.2d 546.

[41] Cause No. PUD 201600059, Order No. 652208.

[42] Lone Star Gas Co. v. Corp. Comm'n of Okla., 1934 OK 396, ¶ 23, 39 P.2d 547 (emphasis supplied).

[43] Lone Star Gas Co., 1934 OK 396 (in the syllabus by the Court) (emphasis supplied).

[44] Pub. Serv. Co. of Oklahoma, 1983 OK 124, ¶ 11.

[45] Lone Star Gas Co., 1934 OK 396, ¶ 23.

[46] Globe Life & Acc. Ins. Co. v. Oklahoma Tax Comm'n, 1996 OK 39, ¶ 15, 913 P.2d 1322; Anderson v. O'Donoghue, 1983 OK 76, ¶ 9, 677 P.2d 648.

[47] Globe Life & Acc. Ins. Co., 1996 OK 39, ¶ 15; Anderson, 1983 OK 76, ¶ 9.

[48] Bruner v. Timberlane Manor Ltd. P'ship, 2006 OK 90, ¶ 25, 155 P.3d 16; Trimble v. City of Moore, 1991 OK 97, ¶ 30, 818 P.2d 889.

[49] Title 17 O.S. 2011 §152, see ¶ 22, supra.

[50] Lone Star Gas Co., 1934 OK 396, ¶ 23, 39 P.2d 547.

[51] Cmty. Nat. Gas Co., 1938 OK 51, ¶ 23, 76 P.2d 393.

[52] Order No. 286 (Dec. 2, 2015).

 

 

WINCHESTER, J., dissenting:

¶1 As noted by the majority opinion, the Oklahoma Constitution provides the Corporation Commission with broad authority to regulate and oversee public utilities. Okla. Const. art. 9, § 18. See also 17 O.S.2011, § 152 ("The Commission shall have general supervision over all public utilities..."). Nevertheless, today's majority opinion dials back this authority and effectively reduces the Commission's general supervision.

¶2 The majority opinion misinterprets § 286(B) as providing the only authority for pre-approval of a capital expenditure to comply with an environmental regulation. Yet, the plain text of § 286(B) indicates that it is not mandatory for a public utility to utilize this statute when purchasing equipment to meet environmental requirements. The statute specifically gives a utility the option of applying for early cost recovery by providing: "An electric utility...may file an application seeking Commission authorization of a plan by the utility to make capital expenditures for equipment or facilities necessary to comply" with certain environmental requirements. 17 O.S.2011, § 286(B) (emphasis added).

¶3 Here, OG&E did not seek, nor did the Commission approve, any rate increase or cost recovery from rate payers. OG&E formulated its own plan to install the scrubbers and voluntarily submitted the plan to the Commission for a reasonableness determination. The Commission specifically indicated that its finding of reasonableness would "not result in an automatic right to recover costs or a determination of used and useful." There is no conflict between the Commission's actions under its general authority and a § 286(B) pre-approval of costs. The canon of statutory construction which requires a specific statute to control over a general statute only applies if the two statutes conflict with one another and that is not the case herein. Humphries v. Lewis, 2003 OK 12, n.4, 67 P.3d 333; Rogers v. QuikTrip, 2010 OK 3, ¶ 13, 230 P.3d 853. Accordingly, I respectfully dissent.

 

 

 

 

 

 

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 50, 740 P.2d 134, Hair v. Oklahoma Corp. Com'n
Discussed
 1988 OK 126, 769 P.2d 1309, 59 OBJ 2998, Turpen v. Oklahoma Corp. Com'n
Discussed
 1991 OK 97, 818 P.2d 889, 62 OBJ 2887, State ex rel. Trimble v. City of Moore
Discussed
 1938 OK 51, 76 P.2d 393, 182 Okla. 137, COMMUNITY NATURAL GAS CO. v. CORPORATION COMM'N
Discussed at Length
 1994 OK 38, 873 P.2d 1001, 65 OBJ 1340, Southwestern Bell Telephone Co. v. Oklahoma Corp. Comm.
Discussed
 1997 OK 102, 944 P.2d 312, 68 OBJ 2545, DELONEY v. DOWNEY
Discussed
 1967 OK 152, 429 P.2d 957, WILEY v. OKLAHOMA NATURAL GAS COMPANY
Discussed
 1934 OK 396, 39 P.2d 547, 170 Okla. 292, LONE STAR GAS CO. v. CORPORATION COMM'N
Discussed at Length
 1995 OK 33, 896 P.2d 522, 66 OBJ 1239, Carris v. John R. Thomas and Associates, P.C.
Discussed
 2002 OK 97, 61 P.3d 234, STATE ex rel. TAL v. CITY OF OKLAHOMA CITY
Discussed
 2003 OK 12, 67 P.3d 333, HUMPHRIES v. LEWIS
Discussed
 1996 OK 39, 913 P.2d 1322, 67 OBJ 1043, Globe Life & Accident Insur. Co. v. Oklahoma Tax Comm.
Discussed at Length
 1996 OK 43, 918 P.2d 733, 67 OBJ 1021, Public Service Co. of Oklahoma v. Oklahoma Corp. Comm.
Discussed
 2006 OK 90, 155 P.3d 16, BRUNER v. TIMBERLANE MANOR LIMITED PARTNERSHIP
Discussed
 2007 OK 55, 164 P.3d 150, COX OKLAHOMA TELECOM, LLC v. STATE ex rel. OKLAHOMA CORPORATION COMM'N.
Discussed at Length
 2010 OK 3, 230 P.3d 853, ROGERS v. QUIKTRIP CORP.
Discussed
 1975 OK 15, 543 P.2d 546, OKLAHOMA GAS & ELECTRIC CO. v. CORPORATION COM'N
Discussed
 1976 OK 148, 561 P.2d 50, DATA TRANSMISSION CO. v. CORPORATION COM'N
Discussed
 1979 OK 14, 590 P.2d 667, CONTINENTAL TEL. CO. OF OKLAHOMA v. HUNTER
Discussed
 1950 OK 297, 225 P.2d 363, 203 Okla. 659, CHICAGO ROCK ISLAND & PAC. R. CO. v. STATE
Discussed at Length
 1999 OK 20, 976 P.2d 1056, 70 OBJ 862, Salazar v. City of Oklahoma City
Discussed at Length
 1983 OK 76, 677 P.2d 648, Anderson v. O'Donoghue
Discussed at Length
 1983 OK 115, 673 P.2d 839, Monson v. State ex rel. Oklahoma Corp. Com'n
Discussed at Length
 1983 OK 124, 688 P.2d 1274, Public Service Co. of Oklahoma v. Oklahoma Corp. Com'n
Discussed at Length
Title 17. Corporation Commission
 Cite
Name
Level

 17 O.S. 286, Cost of Transmission Upgrades - Approval of Electric Generation Facilities - Rules
Discussed at Length
 17 O.S. 151, Public Utility Defined - Exemption of Nonprofit Water and Sewer Corporations - Washington County - Authority of Certain Beneficiaries to Condemn Property
Discussed at Length
 17 O.S. 152, Commission's Jurisdiction Over Public Utilities
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA